# CHARLESTON.

STATE v. WOTRING.

Submitted September 15, 1904—Decided December 6, 1904.

1.   SPECIAL COMMISSIONERS.—*Principal and Surety—Surety Liable.*.
     In a decree for a sale of land on terms of part cash, part
     credit, the special commissioner is required before sale to give
     bond conditioned according to law. The bond is conditioned
     that he shall "faithfully discharge his duties as such commis-
     sioner, and account for and pay over, as required by law, all
     money which may come to his hands by virtue of said office."
     The bond binds the principal and sureties for all money receiv-
     ed by the commissioner whether from the cash or deferred pay-
     ments. (p. 396).

2.   OFFICIAL BOND.—*Construction of Statute Bond.*
     A bond given under a statute must be construed, as to the
     scope of its obligation, to cover the objects of the statute in re-
     quiring it, if its words will at all allow such construction, and
     the statute is to be regarded a part of it. (p. 396).

Error to Circuit Court, Preston County.

Action by the State, for the use of Calhoun's administrator,.
against D. M. Wotring and others. Judgment for defendants,
and plaintiff brings error.
                                                    *Reversed.*

P. J. CROGRAN, for plaintiff in error.

NEILL J. FORTNEY, W. G. WORLEY and R. W. MONROE, for
defendants in error.

BRANNON, JUDGE:

In a suit in Preston county, Wotring was appointed a special
commissioner to sell lands to pay various debts on the terms of
one-third cash and the balance in two payments in one and two
years, and the decree required him before acting to give a bond
in the penalty of $2,000, conditioned according to law. He gave
the bond with Dawson and Fortney as sureties. The bond re-
cites such appointment as special commissioner, and says:
"Now, if said Wotring shall faithfully discharge his duties as
such commissioner, and account for and pay over, as required by
law, all money which may come to his hands by virtue of the
said office, then the above obligation to be void." Wotring sold
the land for $3,080, receiving the cash payment, and took from

the purchaser two notes for balance of purchase. Wotring was·
directed and authorized by the decree confirming the sale to col-
lect the notes and pay their proceeds to the persons entitled
under the former decree. He paid over the cash payment, and
collected, but did not pay over, the money collected for the notes,.
and Calhoun, who was decreed a debt in the case, brought an
action on said bond, in which the facts were agreed, and the·
court gave judgment for the defendants, and Calhoun brought
the case here. The decree which required the bond was the first
decree, and the subsequent decree provided for no other or
further bond. It did not limit the bond to any particular part
of the sale proceeds.

The sole question is whether the bond covers the money aris-
ing from the notes given for the deferred purchase money, or
only the cash payment. It is contended that this bond was in-
tended to cover only the cash payment, and was so understood,.
by the sureties; that Wotring had no authority by law to collect
the notes, and that the sureties are not bound for them; that the
court ought to have required a second bond in the second de-
cree, and that this omission cannot operate to charge the sure-
ties. By no means can we agree to this contention. Section 1,
chapter 132, Code, edition of 1887, the law at the time, demands
a bond before sale. It prohibits a commissioner from receiving
any money before giving the bond, and in words prohibits him
from making sale until a bond has been given. *Neely* v. *Ruley,*
26 W. Va. 686. Therefore, we cannot say that the law contem-
plates two bonds in case of sale for part cash, and part credit;
but we can say that it requires a bond before sale, which ought
to be provided for in the decree of sale, and the bond is designed
to cover all and any money arising from the sale, whether from
an entire cash payment or part cash and part credit sale. It was
decided that payment to a commissioner, who was required to
give, but did not give, bond was not good, and the purchaser
must again pay the money; and hence the change in the law de-
manding a bond before sale. The design is to protect the pur-
chaser, creditor and debtor having any interests in the proceeds
of sale—all the proceeds—and we find no warrant for limiting
the protection intended by the statute to any particular part of
the proceeds. The statute neither makes nor implies any such
distinction. What reason to say that the statute does not intend

to protect parties entitled to the money, whether it come from cash or deferred payment? The hurt of defalcation is the same. Why is not Calhoun, whose money was to come from the notes, as much authorized to look to the bond as one whose money would come from the cash payment? The statute does not provide for two bonds. The bond taken under a statute is to be construed by it, if its words will admit of it, as the statute is part of the bond. *State* v. *Nutter,* 44 W. Va. 385; 9 Cyc. 756. So much for the object, letter and import of the statute. Turn to the bond. Its contract and covenant make no such limitation. It is broad. It stipulates that the commissioner shall faithfully discharge his duties, as required by law, and the law demands that he apply the money—any coming to him under the sale—as the decree requires. Not only this, but the letter of the bond is that he shall account for and pay over "all money which shall come to his hands." It recites that Wotring had been appointed to sell and "collect and disburse the proceeds arising from the sale." This means all the proceeds. Notice the words "all money." No distinction is here made as to cash and credit moneys. It says all moneys coming "to his hands by virtue of said office." Did not this money come to his hands only as commissioner? It was by color of his office. *Lucas* v. *Lock,* 11 W. Va. 81, 89; *Songster* v. *Com.,* 17 Grat. 131. It is a rule that the obligation of sureties will not be strained and stretched beyond the letter of the bond; (*State* v. *Nutter,* 44 W. Va. 385.) but we do not do this in this instance. The letter of the statute, its spirit and object, and the very letter of the bond bind them for all this money to the extent of the penalty of the bond. We are told that as the farm brought more than the penalty, and it is not likely the court intended the bond to go beyond the cash payment, and the parties so understood, these circumstances indicate that the bond was intended to go no farther. Why talk about silent intent and understanding in the face of the words of the bond and the design of the statute? How can a court defeat the statute by *guessing* at the silent understanding? Such an understanding is not shown. If the design was to limit the bond to the cash payment, why did it not so provide? The decree made no such limitation in its requiremnt of the bond.

We reverse the judgment, and upon the facts agreed give judgment for the plaintiff.       *Reversed.*