## TRINITY PORTLAND CEMENT CO. v. LION BONDING & SURETY CO.
### (No. 182–3218.)

(Commission of Appeals of Texas, Section B. March 9, 1921.)

**1. Municipal corporations** ☞347(1)—**Statute requiring bond by contractor conditioned to pay laborers and materialmen read into bond by implication.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, requiring public contractor to execute bond conditioned on payment to laborers and materialmen, was by implication read into such a city contractor's bond.

**2. Evidence** ☞65—**Parties to public contractor's bond presumed to know provisions of statute requiring the bond.**

Parties to public contractor's bond were presumed to know the provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, requiring such a bond.

**3. Municipal corporations** ☞347(1) — **Public contractor's bond construed in connection with the contract and the statute requiring bond.**

Contractor's bond will be construed in connection with the contract and Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, requiring the contractor to execute such a bond.

**4. Contracts** ☞167—**Customs and usages** ☞13—**Law and usage become part of contract.**

When an agreement is silent or obscure as to a particular subject, the law and usage become a portion of it.

**5. Contracts** ☞157—**Inadvertent words treated as surplusage.**

Where it is clear that a word has been written into an instrument inadvertently, and it is clearly inconsistent with and repugnant to the meaning of the parties as shown by the whole instrument, it will be treated as surplusage and rejected altogether.

**6. Evidence** ☞29—**Judicial notice of purpose for which statute was enacted.**

In action involving the question of whether public contractor's bond executed under Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, protected laborers and materialmen, the court will take judicial notice that such statute was enacted to protect laborers and materialmen who in many cases were left unpaid.

**7. Municipal corporations** ☞347(1)—**Contractor's bond held to protect materialmen.**

Bridge contractor's bond executed under Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, conditioned on contractor's performance of his contract, inured to the benefit of materialmen who furnished material to contractor, though the contract provided that the bond should cover the guaranty that all "labor and materialmen liens should be paid," since such provision as to liens will be disregarded as surplusage, inasmuch as there could be no such liens on public works, and since such statute requires that the bond be executed to protect laborers and materialmen, and will be read into the bond.

**8. Contracts** ☞153—**Not construed as invalid if possible to avoid it.**

A contract will not be construed so as to render it invalid if it can be so construed to sustain its validity without violating the accepted canons of construction.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Trussed Concrete Steel Company of Texas and others against the Hess & Skinner Engineering Company and the Lion Bonding & Surety Company, in which the Trinity Portland Cement Company and another intervened. Judgment for plaintiffs and interveners was reversed and rendered in part and affirmed in part by Court of Civil Appeals (204 S. W. 1176), and the named intervener brings error. Judgment of Court of Civil Appeals reversed and judgment of district court affirmed.

Thompson, Knight, Baker & Harris, of Dallas, and Sam D. Ware, of Belton (Alex F. Weisberg, of Dallas, of counsel), for plaintiff in error.

A. B. Wilson, of Houston, and M. E. Monteith, of Belton, for defendant in error.

KITTRELL, J. The briefest possible condensation of the record that is consistent with clearness reveals the following facts:

(1) That Hess & Skinner, a corporation, of Dallas, Tex., by an instrument bearing no date, so far as the record reveals, but which in the bond hereinafter referred to, is referred to and recited as having been executed May 20, 1914, contracted to build two certain bridges for the city of Belton across Nolan creek in said city, and the Lion Bonding & Surety Company became surety on the bond required by the city for the performance of the contract.

(2) The bridges were finished according to the contract, so far as the record shows, and there appears to have been no controversy between the city and the contractors, but the contractors left unpaid several materialmen. The Trussed Concrete Steel Company brought suit against the contractors and against the bonding company, and the Trinity Portland Cement Company and R. L. Henderson, receiver of the Peyton-Smith Hardware Company, intervened.

(3) On trial the plaintiff and interveners recovered judgment against Hess & Skinner Engineering Company respectively as follows: Plaintiffs in error for $1,944.67; Trinity Portland Cement Company, for $3,174.88; and R. L. Henderson, receiver, for $222.40.

It appears that some part of the material sold by each of the materialmen did not go

into the bridges; hence the net judgment in favor of each for which amount judgment was rendered against the surety company, defendant in error, was.as follows: That in favor of plaintiff in error, $1,644.67; Trinity Portland Cement Company, $2,384.78; R. L. Henderson, receiver, $155.55.

The case of defendant in error, as appellant in the Court of Civil Appeals, was based upon only one ground, viz. that, construing the contract and bond together, they did not create any obligation on the part of the defendant in error to the plaintiff in error or either of the interveners, or, to state the proposition in other words, neither the plaintiff nor either of the interveners could recover on the bond.

This contention was sustained by the Court of Civil Appeals, and the judgment of the district court was reversed, and judgment rendered for the bonding company, defendant in error.

The holding of the Court of Civil Appeals, as stated in the syllabus in 204 S. W. 1176, is as follows:

"Despite Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f and 6394j, where bridge contractors' bond was conditioned on completion according to specifications and delivery to the city free from all liens, which completion was had and delivery free from liens made to city because no one can have a lien on public works, surety was not liable to materialmen; 'liens' having its usual signification, and not meaning claims."

### Opinion.

It is obvious from what has been said that the sole question for our determination is whether or not under the terms of the bond its provisions inured to the benefit of and protected those in whose favor the trial court rendered judgment.

The paragraphs and provisions of the contract between the city of Belton and the contractors which are necessary to be considered in arriving at a decision follow the recital that the contractors agreed for $21,000 to build two certain concrete bridges, and read as follows:

"Said contractor agrees to execute a good and sufficient bond, acceptable by the said city conditioned upon the faithful performance of this contract by the said contractor, said bond to be in the sum of twenty-one thousand ($21,000) dollars, payable to Neal Bassel, mayor of Belton, Texas. * * *

"The said contractor shall so execute the bond for faithful performance of this contract as to also cover guaranty that all labor and materialmen liens shall be paid by the said contractor, and, if requested by the said city, the contractor shall make affidavit that all labor and material had been paid for."

The bond was given May 23, 1914, and the recitals thereof which are necessary to be set forth are as follows:

"Whereas said principal has entered into a certain written contract, a copy of which is hereto attached and made a part thereof, bearing date the 20th day of May, 1914, for the construction and completion of two reinforced concrete bridges in the city of Belton, Tex.: Now, therefore, the condition of the foregoing is such that, if the said principal shall well, truly, and faithfully comply with all the terms, covenants, and conditions of the said contract on said principal's part to be kept and performed *according to the tenor thereof*, then this obligation is to be null and void; otherwise to be and remain in full force and virtue in law."

[1] Article 6394f, V. S. R. S., provides in substance that every contractor on any kind of public work shall be required before beginning such work to execute the *"usual* (italics ours) penal bond" with the *additional* (italics ours) obligation that such contractor or contractors shall promptly make payment to all persons supplying him or them with labor and material in the prosecution of the work, etc., and every such person is given the right to intervene in any suit brought on the bond and have his rights adjudicated. This statute was by conclusive implication of law read into the bond. Authorities post.

Having thus before us the contract between the city and the contractors, the bond upon which the defendant in error became surety, and of which the contract was made a part, and the statute relating to bonds when the work is of a public nature, it is next logically in order to construe and interpret the contract of suretyship.

[2, 3] The principles and rules of law applicable to the construction of contracts are so elementary and so familiar to the profession that it is unnecessary to set them forth. It is sufficient to say that all parties in any wise connected with the contract were presumed to know the law, and that the instruments above quoted from must be construed together, and be construed also in connection with the statute above cited, which by conclusive implication of law was written into the contract, and became as much a part of the bond as though it were expressed therein, and the bond must be read and understood in the light of it. Ruling Case Law, vol. 6, § 243, p. 855; Cyc. vol. 9, p. 582; Hamburg, etc., v. Garlington, 66 Tex. 103, 18 S. W. 337, 59 Am. Rep. 613; Kerr v. Galloway, 94 Tex. 641, 64 S. W. 858; U. S. v. Quincy, 71 U. S. (4 Wall.) 549, 18 L. Ed. 403; Snider v. Green, 51 Ind. App. 348, 96 N. E. 960; Rice v. Dwight, 2 Cush. (Mass.) 80; U. S. v. McDowell (D. C.) 21 Fed. 563; State v. Wotring, 56 W. Va. 394, 49 S. E. 365. This is true where the question arising for decision involves the right of principal and surety. U. S. F. & G. Co. v. Fultz, 76 Ark. 410, 89 S. W. 93.

[4] "When an agreement is silent or obscure as to a particular subject, the law and

usage become a portion of it and constitute a supplement to it and interpret it." Cyc. vol. 5, pp. 754, 755.

[5] The Court of Civil Appeals laid what we conceive to be undue stress on the word "liens," and the following expression of the consensus of judicial opinion is peculiarly applicable to the situation:

"Where it is clear that a word has been written into an instrument inadvertently, and it is clearly inconsistent with, and repugnant to the meaning of the parties, as shown by the whole instrument, it will be treated as surplusage and rejected altogether." Cyc. vol. 9, pp. 580, 584, 585.

[6] In construing the contract of suretyship, we are authorized to take judicial knowledge of the fact that the statute above cited was enacted in order to protect those who labor on public works or furnish materials to the contractors, who in many instances were left unpaid, and the bond given by the contractors did not inure to their benefit.

We will assume what obviously must have been true, viz. that the contractors went to the bonding company to procure it to make the bond which they had contracted to give.

The company in the usual order, and as a matter of business prudence, examined the contract in order to determine the extent of the liability which it would incur if it assumed the attitude of surety. Such examination (which is presumed to have been made in the light of the law) could not have failed to clearly reveal to the bonding company:

First, that the bond it was asked to give was intended to and would serve a dual purpose, viz. to assure and secure the city that the work would be done according to the plans and specifications, and to protect the laborers and materialmen.

Second, that it was not intended to protect the city against "materialmen liens," because there could be no such liens.

Third, that in view of the law and the contract between the city and the contractors, unless the bond did operate to protect the laborers and materialmen, it would not perform the functions of a bond required by the statute which was written into it.

Fourth, that had nothing more been intended than to protect the city, the explanation and amplification of the meaning and purpose of the bond disclosed by the stipulation that the contractor would make affidavit that all labor and material had been paid for would not have been written into the contract between the city and the contractors at all.

If there was anything omitted from the contract between the city and the contractors that was necessary to a clear understanding on the part of the bond company of the measure of the liability which it was asked to assume, and which later it did assume, the statutes supplied the omission, since it became a portion of the bond, constituted a supplement to it, and interpreted it. Authorities supra. Under such circumstances and with such knowledge the bonding company stipulated as follows:

"Now, therefore, the condition of the foregoing is such (the bond being made part of the contract) that, if the said principal shall well, truly, and faithfully comply with all the terms, covenants, and conditions of said contract on said principal's part to be kept and performed according to the tenor thereof, then this obligation is to be null and void; otherwise to be and remain in full force and virtue in law."

[7] It was a legal statutory obligation, the plain meaning of which is that, if the contractor either failed to build the bridges according to contract, or failed to pay the laborers who did the work or the materialmen who furnished material, the surety would do so.

In quoting the second stipulation of the contract, hereinbefore quoted in full, the Court of Civil Appeals omitted the last clause providing for a showing that "all labor and material had been paid for." We attach much importance to these words. To our minds they are very significant: First, because they make clear the purpose of the stipulation made and the bond contracted to be made; and, second, because the word "liens" is not used expressly or impliedly; the language being "all labor and material," etc., which is in perfect harmony with the statutes, while the term "materialmen liens" is meaningless because without support in possibility or in law; hence may upon recognized authority be treated as surplusage. Authorities supra.

The second stipulation of the contract between the city and the contractors explains the nature and purposes of the bond. In it the words "for the faithful performance of this contract" are used just as they are used in the stipulation preceding as to making a bond.

Not content with that formal, yet comprehensive, declaration of the purpose of the required and contemplated bond, it is further recited that the bond should be executed ("for the faithful performance of this contract") as to guaranty "that all labor and materialmen liens shall be paid by the said contractor."

Unless the bond was intended to protect those to whom it could afford protection, and whom the statute was intended to protect, the making of the contract, and making of the bond a few days later, of which the contract was a part, were, except in so far as the bond operated to protect the city, idle and futile formalities.

From the analysis of the case of Lyman v. City of Lincoln, 38 Neb. 794, 57 N. W. 531, as made by counsel for plaintiff in error, it

appeared to us to be a case peculiarly applicable to the instant case, and we have carefully examined it.

The contract in that case contained the following stipulation:

"The contractor shall file with the board of public works receipts of claims from all parties furnishing materials and labor in the construction of such engine houses before the final estimate is paid, and the work accepted from the hands of the contractors."

The bond contained this stipulation:

"That the above mentioned [contractors] shall well and truly, execute all and singular the foregoing stipulations by them to be executed, or on default thereof we jointly and severally bind ourselves * * * to pay the city of Lincoln all damages which may result from such default."

The court says:

"The clause, 'The contractors shall file with the board of public works receipts' of claims from all parties," etc., "found in the contract between the city and [the contractors] liberally and fairly construed, means that Layne & Sweet [the contractors] promised the city that they would make payment to those who furnished them material or labor on said buildings; and the sureties, in their bond, guaranteed that Layne & Sweet would perform this promise."

The appellees in that case further contended that the sum total of the obligations of the sureties was to pay the city of Lincoln the damages it might sustain by reason of Layne & Sweet not filing receipts.

Concerning such contention the court said:

"If this contention is correct, the clause referred to in the contract is meaningless. The city of Lincoln could suffer no damages by the failure of Layne & Sweet to pay for the labor or material, * * * and no lien for such labor or materials could be asserted against such buildings, * *. * but, the nature of the contract and bond considered, counsel's contention is too narrow a construction.

"Obviously the city of Lincoln intended by this bond to protect from defaults of its contractors all those who might labor on or furnish material for its buildings. * * * We do not deem [any] statute or ordinance indispensable" to enable the city of Lincoln to do this.

"The awarding of the contract to Layne & Sweet was a sufficient consideration to them and their sureties to support their promise to pay for this labor and material. The promise they made to the city of Lincoln was for the benefit of all who labored on these buildings, and all who furnished material that was used in their construction; and since Lyman had furnished materials to these contractors, which were used in these buildings for the city, the bond inured to his benefit, and he can maintain a suit thereon."

It will be observed that, while there was no statute in Nebraska such as there is in Texas, yet the court, construing a contract and bond strikingly similar, if not substantially the same as in this case, held that the bond inured to the benefit of the materialmen. It is unquestionably true, as the Court of Civil Appeals says, that the language in a contract must be given its obvious meaning and the agreement of the parties be thereby ascertained; yet it is equally true that a word in a contract which in the connection in which it is used has no significance in law, but is out of harmony with the statute, cannot be given controlling and decisive effect, but it may be treated as surplusage. Authorities supra.

The word "liens" following the word "materialmen" is utterly meaningless if given its strictly legal significance; while, if it be treated as surplusage, or be construed as meaning "claims," in which sense it was evidently used, the stipulation provides for that being done which the statute requires to be done and what the bond was given to secure being done; while, if it be used and given the literal rigid meaning which the Court of Civil Appeals gives it, it renders wholly invalid the entire contract of security.

The case of Stone v. Browning, 49 Barb. (N. Y.) p. 249, is a helpful authority in support of this construction. The plaintiffs in that case claimed that a delivery of certain goods was absolute, and not subject to approval, but in writing to defendants used the term "lien" "for the price," and the defendants insisted that the term was inconsistent with the claim of an absolute delivery. The court said the word was not used in a technical sense, but was an expression equivalent to "claim or demand." The present case is even stronger than the New York case, because there could be no "materialmen liens," the term used in the contract between the city and the contractor.

[8] We do not believe such construction should be given the contract as will render it invalid, when it can be so construed as to sustain its validity without violating the accepted canons of construction.

"Where one construction will make a contract valid and uphold it, and another defeat the intention of the parties by making the contract invalid, the former construction will be adopted, if reasonable." Cyc. vol. 9, p. 586.

"If a contract is of doubtful meaning, and one construction would make it legal and another illegal, the courts will adopt that construction which will not impute to the parties an intention to violate the law. Presumptions of the law are in favor of the good faith of all parties to a business transaction, and, if the language of a contract is fairly susceptible of a construction or explanation which renders it valid and enforceable according to its terms, such construction will be adopted in preference to one which brands it with illegality, and makes it possible for one to repudiate the performance of his promise while demanding full payment of the consideration to be given therefor." R. C. L. Contracts, § 229.

The contract is part of the bond, and by it, read in connection with the statute, the bonding company was advised of the scope and extent of its undertaking, and should not now be heard to say it did not contract to do what the law, which became a part of the contract, says it did contract to do.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes