RUMBAUGH v. MORRISS. (No. 7193.)

(Court of Civil Appeals of Texas. San Antonio. June 16, 1924. Rehearing Denied July 2, 1924.)

1. Pleading ⬛➡147—Allegations in cross-bill held not to state cause of action against attorney.

Allegation in cross-action that client, on attorney's advice, employed another to assist in securing a favorable vote from a school board to consummate an exchange of real property, and that attorney was negligent in so advising him, and praying a recovery of amount thus expended *held* not to state a cause of action.

2. Attorney and client ⬛➡141—Award of $4,500 for attorney's services in exchange of property held reasonable.

An award of $4,500 was a reasonable amount for services performed by an attorney in effecting a trade of property worth $50,000 to a school board for property worth $61,000 and in addition $35,000 in cash.

3. Contracts ⬛➡140—Client cannot set up illegality of contract to defeat recovery for attorney's services.

In a suit by an attorney for services in a contract for exchange of real property, if contract was illegal, client could not set such illegality up to defeat attorney's recovery for services.

4. Contracts ⬛➡140—Incidental illegal act will not defeat attorney's recovery for services.

If an attorney shows a contract in which he is not obliged to prove his own illegal act to support a recovery, though such may incidentally appear, it presents no obstacle to a recovery.

5. Attorney and client ⬛➡143—Contract with attorney to effect sale of real estate to school board held valid.

A contract by which a client employed an attorney in connection with sale and exchange of property owned by client to a school board was valid, notwithstanding that part of services performed by attorney was in endeavoring to secure exchange of property.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Will A. Morriss against George S. Rumbaugh, in which defendant filed a cross-action. Judgment for plaintiff, and defendant appeals. Affirmed.

T. H. Ridgeway and M. S. Hallam, both of San Antonio, for appellant.

Mason Williams and M. J. Arnold, both of San Antonio, for appellee.

COBBS, J. This suit was filed by appellee against appellant to recover $5,000 as attorney's fees, the alleged value of legal services performed under a contract of employment in connection with the sale and exchange of property then owned by appellant, known as the old Electric Park, to the San Antonio school board for a cash consideration of $35,000, and its conveyance, in addition thereto, of real estate on South Flores street, to appellant, all situated in San Antonio.

[1] Appellant filed a number of exceptions and a cross-action to recover $1,000 from appellee, upon the alleged ground that, acting under appellee's advice, A. Saladino was employed to assist in securing a favorable vote of a member or members of the school board to consummate the trade, from which he received no benefits. Appellant alleged: That appellee sent for said Saladino, and, after conferring with him, the appellee represented to appellant that said Saladino wanted $1,000 for his services in such matter, and appellee advised appellant to employ him, and appellant, acting solely upon the advice and insistence of appellee as his attorney, agreed to pay said Saladino said $1,000, but soon thereafter the said Saladino demanded an additional $500, making a total of $1,500 for his services, which appellee advised appellant to pay, and, acting solely upon the advice of appellee, the appellant agreed to pay said Saladino the sum of $1,500 for his services in procuring the vote of the member of said school board with whom he claimed great influence, favorable to the acceptance of appellant's proposition. That, acting upon the advice of appellee, the appellant paid the sum of $1,000 cash to said Saladino,- and agreed to pay him an additional $500 upon the acceptance by said school board of appellant's proposition.

Appellant then alleged that appellee was negligent in advising him to secure the services of said A. Saladino and to pay to A. Saladino the sum of $1,000, and prayed for a judgment over against appellee for the return of said $1,000, and prayed that appellee take nothing by the suit.

There was no error committed by the court in sustaining the exception to strike out appellant's cross-action. There was no cause of action alleged that would justify a recovery against appellee. There is no allegation of fraud committed by appellee in connection therewith. It is not germane here any-

way to any real issue in this case, and obviously it is a matter of concern only between appellant and Saladino.

This is a fact case, and the sole question to be determined is, Was appellee employed as alleged by appellant to perform the services in connection with the sale and exchange of this property, and was it a valid contract? That he was so employed is shown by the undisputed testimony.

The court correctly submitted to the jury the undisputed question as to the value, as follows:

"What was the reasonable value, if any, of the services, if any, rendered by the plaintiff Will A. Morriss, as an attorney, at the instance of the defendant George S. Rumbaugh? Answer, stating the amount.

"In ascertaining the reasonable value of the services, if any, of the plaintiff inquired about in the foregoing question, you may take into consideration the nature of such services, the amount involved, the interests at stake, the capacity and fitness of the plaintiff for the required work, the services and labor rendered by the plaintiff, the length of time occupied by such services, and the benefit, if any, derived by the defendant from such services."

[2] And the jury answered that $4,500 was a reasonable amount for the services performed.

As a fact case, was there sufficient evidence to support the verdict? Now, let us see what benefits appellant secured in connection with appellee's personal services, legal advice, and assistance: (1) Preparing and filing formal answer in suit of Compton-White Co. v. Rumbaugh, in which a large amount is involved. (2) Writing five letters to school board. (3) Preparing and filing answer in suit of A. Saladino v. Rumbaugh. (4) Examining abstract of title to South Flores street property. (5) Writing one quit-claim deed from City of San Antonio. (6) Writing two warranty deeds. (7) Writing one release. (8) Rearranging one lease. (9) Looking after remission of part of taxes on Electric Park property whereby $70 was saved.

The value alleged of the Electric Park property traded to the school board by Mr. Rumbaugh was only worth $50,000, and the property on South Flores street that was exchanged by the school board to Mr. Rumbaugh in part payment of the Electric Park property was alleged to be worth $61,900. It was shown by the evidence that the South Flores street property and $35,000 in cash were exchanged by the school board for the Electric Park property; the value of the Electric Park property being placed at $85,000, and the value of the South Flores street property at $50,000 in the deal, so that, according to the testimony of appellee and his witnesses, he was endeavoring to sell to the school board and did actually sell to the school board, for $85,000, a piece of property that was alleged only worth $50,000, and that in making the exchange the school board put in a piece of property for $50,000 that was alleged actually worth $61,000.

Appellant does not seem to have much cause for complaint in putting over the trade of property worth $50,000 to the school board for property worth $61,000, and in addition $35,000 in money of the realm; a clear excess in alleged values of $35,000 over what he gave.

[3-5] The suit is for personal services rendered in connection with that sale. If the contract was illegal it does not lie in the mouth of appellant to set it up to defeat the recovery for services. It does not so appear on the face of the pleading, and the contract is nowhere pleaded or shown to be illegal. The appellee's right of recovery is not dependent upon any part of an illegal contract to enforce its performance. The court looks with disfavor upon any illegal transaction or acts of either party. It closes its doors to both, but if appellant shows a contract in which he is not obliged to prove his own illegal act to support a recovery, though such may incidentally appear, it presents no obstacle to a recovery. Brewing Co. v. Coonrod (Tex. Civ. App.) 230 S. W. 1099. We think appellee has shown a valid contract. It makes no difference that part of the services he performed was in endeavoring to secure the exchange of property. Oscanyan v. Winchester, 103 U. S. 261, 26 L. Ed. 545; Trinity Portland Cement Co. v. Bonding Co. (Tex. Com. App.) 229 S. W. 483.

Having fully considered this case, and all the assignments of error and propositions thereunder, we find no reversible error assigned and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

It is not unusual for some lawyers to lose their poise, become irascible, and say ugly things to the court, sometimes making it the prominent feature and main ground of the motion. It rather detracts from than gives strength to an argument. Appellant says:

"We respectfully submit that an opinion cannot be written in this case affirming the judgment of the trial court, and quoting the undisputed facts in this case, which will meet with the approval of the bench and bar of this state. We feel that we are entitled to have a finding by this honorable court of all of the undisputed facts relative to the employment of Mr. Saladino and the services to be performed by him."

Judgments are not always predicated upon undisputed facts. Were that true, there would be no necessity for jury trials. This proposition is rather novel. Appellant's counsel may be right, but we have never had that view. Where all the facts are undisputed, a question of law only is presented, which would dispose of the case; but the facts are greatly disputed here. We differ

with counsel. We think under the facts and the law of this case it can be properly affirmed.

A careful examination of appellant's answer shows that it is nowhere alleged, nor pleaded, that the employment of appellee, as an attorney at law to represent him, was illegal and void, nor stated the reason whereof it was claimed to be void.

It does set up and plead that appellant is not a real estate broker, and not entitled, as a lawyer, to commission and that his claim was for legal services instead of as a broker; then that was followed up with a general denial. This is the only defense interposed against the claim of appellee, except one of negligence, etc. In paragraph 7 of his answer, among other things, appellant says:

"That it required an affirmative vote of a majority of the members of said school board in order to consummate said sale to said school board. The plaintiff represented to this defendant that he believed he could secure one additional member of said school board to vote for the acceptance of defendant's proposition which, in addition to the members already favorable to the acceptance thereof would have secured the acceptance of defendant's property by said board, but plaintiff failed to secure such additional vote. The plaintiff thereupon represented to this defendant that he was very friendly to A. Saladino, whom he represented possessed great influence with a certain member of said school board, and that said Saladino could secure the favorable vote of said member of said school board for the acceptance of defendant's proposition for the purchase of defendant's said property, and plaintiff advised this defendant to procure the services of the said Saladino. The plaintiff sent for said Saladino, and, after conferring with him, the plaintiff represented to this defendant that said Saladino wanted $1,000 for his services in such matter, and plaintiff advised defendant to employ him, and defendant, acting solely upon the advice and insistence of plaintiff as his attorney, agreed to pay said Saladino said $1,000, but soon thereafter the said Saladino demanded an additional $500, making a total of $1,500 for his services, which plaintiff advised this defendant to pay, and, acting solely upon the advice of plaintiff, this defendant agreed to pay said Saladino the sum of $1,500 for his services in procuring the vote of the member of said school board with whom he claimed great influence, favorable to the acceptance of defendant's proposition.

"Acting upon the advice of plaintiff, this defendant paid the sum of $1,000 cash to said Saladino, and agreed to pay him an additional $500 upon the acceptance by said school board of defendant's proposition. That said school board met soon thereafter and again rejected defendant's proposition, the member with whom said Saladino represented he had great influence was not present at said meeting. This defendant here alleges that he has since learned that said Saladino had no influence with said school board, and had no influence with any member thereof, and that he was unable to render any service of any value whatever in procuring an acceptance of defendant's property by said board, which facts were known to the plaintiff or by the exercise of a proper degree of care could have been known to him. This defendant alleges that the plaintiff was guilty of negligence in procuring and advising the employment of the said Saladino as aforesaid, and was guilty of negligence in advising this defendant to pay said Saladino said sum of $1,000 and agreeing to pay him an additional $500."

Again, in the tenth paragraph of said answer, appellant says:

"This defendant alleges that, on account of the negligence of the plaintiff in advising and insisting that this defendant pay said $1,000 to the said Saladino, this defendant has sustained the loss of $1,000, which is far greater than the value of any services rendered to this defendant by the plaintiff.

"Wherefore this defendant prays that the plaintiff take nothing by this suit and that this defendant have judgment over against the plaintiff for the sum of $1,000, with legal interest thereon, being the amount so paid by this defendant to the said A. Saladino and for the further sum of $350 as a reasonable value of the abstract, deed, and other legal documents retained and withheld by the plaintiff from this defendant. This defendant likewise prays for general and special relief and for costs of court."

Much has been said and many authorities cited against our statement that it did not lie in the mouth of defendant to plead his illegal contract to defeat this recovery. The whole defense is predicated affirmatively on the alleged negligence of Morriss in advising him to employ Saladino to put the deal over, which he attempted to show. We quote from page 6, appellant's motion for rehearing, in order to be fair and give his viewpoint, as follows:

"We will now show that the illegality of the contract sued upon by Mr. Morriss was clearly established by relevant testimony introduced upon the trial of this cause. Mr. Morriss proved that he was employed by Mr. Rumbaugh to perform services in connection with the sale or trade of his property to the school board. In order to establish the value of his services, Mr. Morriss showed that he was instrumental in bringing about the trade with the school board whereby property belonging to Mr. Rumbaugh, which was only worth $50,000 was traded to the school board for $85,000. As a matter of fact the evidence showed that the Electric Park property was only worth $50,000, and that the South Flores street property, which was traded to Mr. Rumbaugh by the school board, was worth $61,900 which, added to the $35,000 cash, would make the consideration received by Mr. Rumbaugh $96,900 for a piece of property only worth $50,000, or a net loss to the school board of $46,900. In order to rebut the testimony introduced by Mr. Morriss on the issue as the value of his services, it became relevant to show that Mr. Morriss had assistance in making the sale, to wit, the services of Compton-White Company, the services of Mr. Wendover and the services of A. Saladino. It became relevant to prove the

character of employment of each of these gentlemen and the services they performed. This rebuttal testimony was relevant under a general denial, independent of the special allegations of illegality of the contract. Therefore the connection Mr. Saladino had with the deal was proven by relevant testimony and without objections. At the close of the case the employment of Mr. Saladino and the kind of services he was to perform and did perform had been fully established by relevant testimony, and the entire matter was before the court. There was no dispute about the facts so the contract sued upon by Mr. Morriss was either legal or illegal as a matter of law."

We again copy from appellant's motion for rehearing:

"Mr. Rumbaugh testified that Mr. Morriss introduced him to Mr. Saladino in Mr. Morriss' office, and that Mr. Saladino professed to be able to influence a vote of the school board and make the sale.

"Mr. Saladino further testified on cross-examination: 'Being asked what services I was to perform under my contract, I will state I was to make every effort I could on any and every individual that could help bring about the closing up of that deal. I knew that in order to close this deal that there had to be a majority vote of the school board, favorable to Mr. Rumbaugh's proposition. Being asked what I was to do with reference to getting a majority vote of the school board favorable to the proposition, I will state that I was not to do anything about getting a majority vote of the school board; I was not to do anything with the school board at all. I did see some of the members of the school board; I spoke to two of the school board members about this proposition. I was to help put this deal over—that was the sum and substance of the whole thing. I did my share in putting the deal over. Being asked what I did as my share, I will state that I talked to Dr. Hargis, the president of the school board about it, and I also talked to Herbear Peairs about it; those were the two members that I talked to. I did not think it was necessary to talk to any more, because I understood that Dr. Hargis was president of board. Those were the only two members that I talked to.' "

While appellant has exhausted himself and discussed needlessly many well-known authorities on the question of the defendant's right to plead an illegal contract to defeat a recovery, such a plea does not appear in his answer.

It does appear, however, that appellant has tried to set up as illegal the recommendation of Morriss to secure the services of Saladino, independently, to assist in putting the deal over, on the sole ground of negligence, because the $1,000 "is far greater than the value of any services rendered to this defendant by the plaintiff." This sets up a matter predicated upon an alleged illegal contract for affirmative relief to reduce or defeat appellee's cause of action seeking to recover $1,000 paid to Saladino and $350, the value of an abstract.

It is inconceivable how the contention of appellant on the question of the alleged illegal contract with Morriss can square with his pleading and the evidence.

We wish it plainly understood that we have said nothing now, or at any other time, as expressing any opinion on the values of the property exchanged, or that the school board made a good or bad trade. No doubt they were looking to the future, and time will tell. That matter is not before us. We have only copied the values as stated in the brief of appellant. As on its face appellant got the benefit of valuable services, it does not lie in his mouth to complain much at the services performed. But whether he did or not, the jury determined the value of appellee's services. This court does not go out of its way to discuss matters or parties not before it.

However, we will say there is nothing in this record to show that the school board or any member thereof was improperly influenced, or that any one attempted to do so improperly, or that they did not act in commendable good faith in the interest of the school children.

We wish to add that this opinion is extended far beyond what is usual, but done so by copying from appellant's pleading, brief, and motion, to elucidate the inconsistent position of the appellant.

The motion is overruled.