**HENNESSEY et al. v. BREWER et al.** *
(No. 315.)

(Court of Civil Appeals of Texas. Waco. March 11, 1926. Rehearing Denied April 8, 1926.)

**1. Mines and minerals ⟋109—Intention of parties to contract to drill for oil and gas is ascertainable from language used, subject-matter thereof, applicable statutes, and surrounding circumstances (Rev. St. 1911, arts. 7847, 7848).**

The intention of parties to a contract to drill for oil and gas must be ascertained from the language used, subject-matter thereof, applicable statutes (Rev. St. 1911, arts. 7847, 7848), and surrounding circumstances.

**2. Mines and minerals ⟋109—Contract to drill for oil and gas held to bind plaintiffs to drill into supposed oil-bearing rock or sand, and not to permit defendants to abandon well any time whether completed or not (Rev. St. 1911, arts. 7847, 7848); "completed test well."**

Contract to drill for oil and gas, entered into in connection with Rev. St. 1911, arts. 7847, 7848, *held* to bind plaintiffs to drill into supposed oil-bearing rock or sand, and not to give defendants privilege of abandoning at any time whether completed or not; test well be-

ing a completed one when the well has been drilled into the formation contemplated and to a proper depth to constitute a test of its productiveness.

**3. Tender ⟋26—Money tendered to plaintiffs by defendants and paid by latter into registry of court is properly applied as a credit upon money judgment in plaintiffs' favor and in satisfaction thereof pro tanto.**

The amount of money tendered to plaintiffs by defendants and paid by latter into registry of court is properly applied as a credit upon money judgment in plaintiffs' favor and in satisfaction thereof pro tanto.

Error from District Court, McLennan County; Sam R. Scott, Judge.

Action by H. W. Brewer and others against J. E. Hennessey and others. Judgment for plaintiffs against all defendants, except Clifford M. Tyler, and such defendants bring error. Affirmed.

Frank Oltorf, of Marlin, and Spivey & Spivey, of Waco, for plaintiffs in error.

Spell, Naman & Penland, of Waco, for defendants in error.

GALLAGHER, C. J. This suit was instituted by H. W. Brewer, J. W. Stevenson, and S. W. Roberts, defendants in error herein. against J. E. Hennessey, Lewis Gray, and Exchange Trust Company, a corporation, executor of the estate of Geo. C. Gray, deceased, plaintiffs in error herein, and against Clifford M. Tyler, a defendant in error herein, to recover damages for the breach of a contract for the drilling of an oil well. The parties will be designated as in the trial court. Plaintiffs' suit was based on a written contract between H. W. Brewer, designated therein as first party, and Lewis Gray, J. E. Hennessey, and, Geo. C. Gray, designated therein as second parties. The material provisions of said contract were as follows: first party agreed to furnish a drilling rig and equipment, and place the same on a lease designated by second parties, "and with said rig and equipment to drill a well for oil and gas on said lease to a depth not to exceed 1,500 feet, and to set the casing and tubing in said well as directed by parties of the second part, and, after the casing has been set and allowed to stand at least twelve hours, said party of the first part shall drill in said well as directed by the parties of the second part."

Second parties agreed—

"to furnish the party of the first part with the necessary fuel, water and casing free of expense * * * at said well being drilled, * * * and to pay to the party of the first part the sum of $2.50 per foot for each and every foot which said well may be drilled by the party of the first part, such payments to be made as follows, to wit: The sum of $200.00 in cash when said rig is placed on the location:

<hr>

⟋For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 26, 1926.

the sum of $500.00 when said well has been drilled to a depth of 500 feet; and the balance upon the completion of said well."

Said contract further provided:

"In the event the parties of the second part abandon said well, the party of the first part has agreed and hereby does agree to pull the pipe from said well and plug said well in the manner required by law; and said parties of the second part have agreed and do hereby agree to pay the party of the first part as his compensation for such services at the rate of forty ($40.00) dollars per day; and it is further understood and agreed that any and all services performed by the party of the first part after the drilling in of said well, and not expressly included in this contract, the parties of the second part shall pay the party of the first part, at the rate of forty ($40.00) dollars per day."

Said contract further provided that—

"Said well shall be drilled under the supervision. and as directed by the parties of the second part."

Plaintiffs alleged that, while said contract was made by said Brewer in his own name, in doing so he was acting, not only for himself, but also for the other plaintiffs, and that all three of them were equally interested therein. Plaintiffs alleged that they had procured said rig and equipment, and placed the same on said lease, and were drilling said well, when defendants breached said contract, refused to longer furnish the supplies which they had agreed to furnish, directed them to cease drilling and to measure .the depth of the well at that time, and offered to pay for the depth of said well as ascertained by said measurement at the rate of $2.50 per foot, in full of all obligations under said contract. They further alleged that they were entitled under said.contract to drill said well to a depth of 1,500 feet at the stipulated rate per foot, and that they would have been entitled to receive therefor the sum of $3,750. They admitted the receipt of $335 on account, and sued for a balance of $3,415 as damages. They admitted in their petition, however, that it would cost them the sum of $300 to finish drilling said well, and that the same ought to be deducted from the damages so claimed.

Plaintiffs further alleged that Geo. C. Gray, one of the parties to said contract, was dead, and made said Exchange Trust Company, as his executor and representative, a party defendant herein. They further alleged that defendant Clifford M. Tyler, after the execution of said contract, purchased from the other defendants an interest therein, and agreed to pay plaintiffs the sums due under said contract.

Defendants in their answer alleged that a proper construction of said contract authorized them to abandon the drilling of said well at any time. They also alleged that said well had been drilled to a depth of 330.8 feet

at the time they directed plaintiffs. to cease drilling; that they had made certain payments to plaintiffs or on their account; and that the balance due plaintiffs for the depth so drilled was $319.71, which they tendered them in full satisfaction of all liability on said contract. They further alleged in the alternative, in the event it should be held that they did not have a right to arbitrarily abandon said well and stop the drilling of the same, that it was contemplated that said well should be drilled to a depth of only 1,040 feet at most, such depth being the depth of a producing well in that territory, and that in no event should they be held liable for damages based on any greater depth.

There was a trial before the' court. It was shown on such trial that prior to the execution of said contract a producing well had been brought in by defendants in that territory at a depth of 1,040 feet, but that the land where plaintiffs were drilling was some higher; that defendants were familiar with the geological formation and structure in that territory; that they were at the same time having another well drilled by other parties; that said well was located between said producing well and the well being drilled by plaintiffs; that said other well was drilled to a depth of 1,115 feet, pronounced dry, and drilling stopped; that defendants then stopped further drilling by plaintiffs, and also stopped the drilling of another well in that territory which had reached a depth of only about 130 feet. It was also shown that other test wells in that .territory about that time or subsequent thereto were drilled to a depth of 1,300 feet or over. There was testimony that defendants had paid to plaintiffs or for them the aggregate sum of $517.30, and that it would have required an expenditure by plaintiffs of $260 additional for labor, if they had been permitted to complete the well. It was admitted that defendants had paid the said sum of $319.71 so tendered into the registry of the court. The court rendered judgment in favor of plaintiffs against defendants Gray, Hennessey, and Exchange Trust Company as executor of the estate of Geo. C. Gray, deceased, for the sum of $2,035.20. No judgment in favor of plaintiffs was rendered against defendant Tyler. A judgment against him was rendered in favor of the other defendants on a cross-action filed by them for one-half of all amounts which they might pay in satisfaction of the judgment against them. Tyler has not complained of said judgment. The other defendants in the case sued out this writ of error, and made him a party defendant therein and a payee in their writ of error bond.

[1] The principal contention in this case is with reference to the construction of said contract. Defendants claim that the terms thereof should be construed to authorize them to abandon said well at any time or at any depth, and that their liability thereon should

be measured at the rate of $2.50 per foot for the depth actually drilled. The intention of the parties to said contract at the time it was entered into must be ascertained from the language used, the subject-matter thereof, the statutes applicable thereto or referred to therein, and the surrounding circumstances. 1 Page on Contracts, § 100; 4 Page on Contracts, §§ 2023, 2025, 2038, and 2044; Haldeman v. Chambers, 19 Tex. 1, 46; Barber v. Herring (Tex. Com. App.) 229 S. W. 472, 474; Trinity Portland Cement Co. v. Lion Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483, 484, 485. The statutes applicable to the matter of drilling oil and gas wells and the abandonment and plugging of such wells are as follows:

"Art. 7847. *Wells, How Cased*—The owner or operator of any well being constructed for the production of petroleum oil, natural gas, or mineral water, shall, before drilling into the oil or gas bearing rock, incase such well with good and sufficient wrought iron or steel casing, in such manner as shall exclude all surface or fresh water from the lower part of such well from penetrating the oil or gas bearing rock. * * *

"Art. 7848. *Abandoned Wells to be Filled*—The owner or operator of any well constructed for either or any of the purposes named in the preceding article, when about to abandon or cease operating the same, and before drawing the casing therefrom, shall securely fill such well with rock, sediment or with mortar, composed of two parts sand and one part cement or other suitable material to the depth of two hundred feet above the top of the first oil or gas bearing rock, and also in such manner as shall prevent the gas and oil from escaping therefrom. * * *" Revised Statutes 1911.

By the terms of said contract defendants employed plaintiffs to drill a well for oil and gas, and plaintiffs agreed to drill such well to a depth not exceeding 1,500 feet. The price to be paid for said work was to be based on the depth of the well, but partial payments only were to be made until the well was completed. The parties knew at the time that oil-bearing rock or sand had been found in that vicinity at a depth of 1,040 feet. They stipulated that plaintiffs should "set the casing and tubing * * * and drill in said well." These provisions, considered in the light of the statutes above quoted and therein referred to, clearly indicate that it was contemplated that plaintiffs should drill into the rock or sand formation in which oil or gas was expected to be found before the well should be considered completed. We think it was further contemplated that said well would probably be completed before reaching the stipulated limit of 1,500 feet in depth.

[2] The defendants, however, insist that the right to abandon said well, given them by the terms of the contract, could be exercised by them at any time, regardless of the condition of the same with reference to being completed or not completed, and that such right was properly exercised by them in this case. The paragraph of the contract, authorizing defendants to abandon said well has been heretofore set out in full. It consists of a single sentence. It binds plaintiffs in such event "to pull the pipe from said well and plug said well in the manner required by law," and provides that plaintiffs shall be compensated for such services at a stipulated rate per day. It further provides that for "any and all services performed * * * after the drilling in of said well," and not expressly included in the contract, plaintiffs shall be compensated in the same manner and at the same rate. This provision, read in the light of the statutes above quoted and the facts of the case, refers, we think, to an abandonment after such rock or sand formation in which oil or gas was expected to be found had been reached and penetrated. When a well has been drilled into the formation contemplated and to a proper depth to constitute a test of its productiveness, it may be properly said to be completed within the meaning of that term as applied to such wells. If it fails to yield oil or gas at all, or fails to yield the same in paying quantities, the owner is, by the terms of the statute, required to fill or plug such well before abandoning the same. The defendants in this case stipulated that plaintiffs should in such event perform said services. Said stipulation is specific and unconditional, and wholly inapplicable, unless the completion of the well by drilling the same into the supposed oil-bearing rock or sand was contemplated. Articles 7847, 7848, supra; 1 Thornton on Oil & Gas (4th Ed.) §§ 44 and 45; Id. §§ 431, 431b; Higgins Oil & Fuel Co. v. Guaranty Oil Co., 82 So. 206, 212, 145 La. 233, 5 A. L. R. 411. We are not unmindful of the provisions of said contract to the effect that plaintiffs should set the casing and tubing and drill in said well as directed by defendants, nor of the provision thereof that said well should be drilled under the supervision of the defendants and as directed by them. Such provisions are not in any way inconsistent with the construction here given to the other stipulations embodied in said contract, and should be so construed as to harmonize with, and not destroy, such other provisions.

While the finding of the trial court in favor of plaintiffs is general, it is clearly apparent that he held that said contract bound plaintiffs to drill said well into the supposed oil-bearing rock or sand, and that it bound defendants to pay for such services at the price stipulated. We think such holding is justified by the language of the contract, when viewed in the light of the statutes applicable and the surrounding circumstances.

[3] The remaining contention urged by defendants is that the judgment is excessive. We have carefully examined the evidence,

and find the amount of the recovery awarded is justified thereby. The $319.71 tendered by plaintiffs and paid into the registry of the court will, of course, be applied as a credit upon said judgment and in satisfaction thereof pro tanto.

The judgment is affirmed.