**SCOTT et al. v. LAW, UNION & ROCK INS. CO., LIMITED, OF LONDON.**
(No. 1136—5082.)

Commission of Appeals of Texas, Section A. Jan. 9, 1929.

I. N. Williams, of Mt. Pleasant, for plaintiffs in error.

Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for defendant in error.

HARVEY, P. J. This suit was brought by plaintiffs in error, S. C. Scott and O. M. Fuquay, to recover of the defendant in error, Law, Union & Rock Insurance Company, on a fire insurance policy. The trial court gave judgment for Scott and Fuquay, jointly, for the full amount of the policy, together with statutory interest thereon. On appeal, the Court of Civil Appeals reversed that judgment and rendered judgment for the defendant in error. 1 S.W.(2d) 712. The case is here on writ of error.

The material facts are substantially as follows:

On April 18, 1923, Scott owned a certain lot and dwelling house thereon, situated in the town of Mt. Pleasant. For several years prior to that date and up to August 7, 1925, J. B. Rowland was the local agent at Mt. Pleasant for said insurance company, and was invested with such general authority as to constitute him a general agent of the company. On April 18, 1923, the insurance company, acting through Rowland as its agent, issued to Scott the fire policy sued on. By the terms of the policy Scott was insured for the term of three years from the date of the policy against loss or damage by fire to said dwelling house to an amount not exceeding $2,000. The policy contained the following provision which the insurance company urges to defeat recovery under the policy: "This entire policy unless otherwise provided by agreement endorsed hereon or added hereto shall be void if any change, other than by death of the insured, takes place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or by voluntary act of the insured."

On February 5, 1926, while the policy still was in force, Scott conveyed, by warranty deed, the lot and dwelling house to one Joe Riddle for the consideration of $200 cash, and notes of Riddle in the sum of $1,800, payable to Scott and secured by the vendor's lien expressly reserved in the deed. The notes bore 8 per cent. interest per annum. At the same time and place, Riddle conveyed the property to Fuquay, by deed duly executed. Scott, at the instance of Fuquay, and immediately after the execution of these deeds, went to the office of J. B. Rowland for the purpose of having him make such changes therein as the changed state of interest in and title to the property required. Upon arriving at the office of Rowland, Scott presented the policy to Rowland and informed him of all the details of the transaction in which the said deeds were executed. Scott told Rowland then that he wanted the policy changed so that he (Scott) would be protected. It is admitted by all parties that the following (as stated in the language of Scott) also occurred on that occasion: "I told Mr. Rowland who I had sold it to and told him I wanted the insurance transferred to Mr. Fuquay and that I was holding an $1800 equity in the place and Mr. Rowland took the policy and looked at it and said, 'this policy expires in April, probably Mr. Fuquay will sell this place in a few days and then we will transfer the policy; and if Fuquay does not, whenever it expires we will make the transfer then to whoever owns it.' Mr. Rowland told me 'it is all right the way it stands now' and I said, 'well, if it is all right that is all I want' and Mr. Rowland said that it was all right to let the policy stand like it was."

On February 10, 1926, the building in question was totally destroyed by fire.

The defendant in error revoked the agency of J. B. Rowland on August 7, 1925, and, on the same day, appointed C. L. Duncan its agent at Mt. Pleasant in his stead. On the last-named date the defendant in error took up Rowland's commission as agent and withdrew from him all supplies in the way of policy forms, and from that day onward C. L. Duncan held himself out to the public in Mt. Pleasant, and vicinity, as the agent of the defendant in error. On August 11, 1926, the defendant in error filed in the state department of insurance, in conformity to the provisions of article 5065 of the Statutes, its designation of C. L. Duncan as its agent at Mt. Pleasant and vicinity. On March 23, 1925, the defendant in error had filed in the state insurance department, as it had done from year to year prior to that time, a designation of J. B. Rowland as its agent at Mt. Pleasant and vicinity. This last-mentioned designation covered the period beginning March 23, 1925, and ending March 23, 1926, and was filed in pursuance of the re-

quirements of the article of the statute mentioned above. No revocation of this designation was ever filed in the state insurance department.

Among the supplies which were furnished by the defendant in error to C. L. Duncan, upon his appointment as agent in August, 1925, were a large number of blotters with the name of the defendant in error and Duncan's name, as local agent, printed thereon. These blotters were distributed by Duncan "in various business houses in Mt. Pleasant and in other ways he distributed the blotters in Mt. Pleasant and vicinity." Duncan also received from the defendant in error a commission of authority as agent for the defendant in error in Mt. Pleasant and vicinity. This commission was printed in large type, and Duncan had it framed and put it on display on the wall of his office in Mt. Pleasant. Neither Scott nor Fuquay ever saw this commission or any of these blotters. Neither of them, until some time after the fire occurred, had any knowledge that C. L. Duncan was agent for the defendant in error or that he was held out as such.

The following admissions of fact, among others, appear in the record: "Plaintiff Scott, at the time he went to J. B. Rowland's insurance office and informed Rowland that he had sold the property and had $1800 vendor's lien notes against it and wanted the policy changed so that he would be protected, believed that J. B. Rowland was still the agent of the defendant insurance company; that the defendant insurance company had never informed him in any way that J. B. Rowland was no longer its agent at Mt. Pleasant, and no one had informed plaintiff Scott that J. B. Rowland was not still the agent of defendant company; that defendant insurance company had not given any public notice to plaintiff Scott or Fuquay of the termination of its agency with J. B. Rowland; that plaintiffs Scott and Fuquay did not learn, and had no character of notice, that Rowland was not the agent of the defendant insurance company, until several weeks after Wendt, the adjuster, of the defendant insurance company had come to Mt. Pleasant to adjust this loss; that at the time this agency was terminated and these papers taken up, the defendant company did not advise either of these plaintiffs, directly or indirectly, or through public print, that J. B. Rowland was no longer the agent of the company." Also that: "Neither of the plaintiffs knew of the termination of the agency of J. B. Rowland until several weeks after the destruction of the house in controversy." Also that: "J. B. Rowland did not claim on February 5, 1926, or any time thereafter, that he was the agent of the defendant company, and had not claimed to be agent of the defendant company since August 11, 1925." Also that "the plaintiffs, or either of them, made no inquiry of anyone in an effort to determine whether or not J. B. Rowland

was still the agent of the defendant company." Also that: "Just a day or two after the sale of the property to Fuquay, and prior to the fire, Fuquay accosted the said J. B. Rowland on the street near the State National Bank, and asked Rowland if Scott had attended to the change in the insurance and Rowland informed plaintiff Fuquay that everything was all right; that at the time of this conversation plaintiff Fuquay owned other property in Mt. Pleasant, and some of the insurance was protected by defendant insurance company and had been written and issued by the said J. B. Rowland prior to August 7, 1925."

The insurance company contends that it is not liable under the policy, on the ground that the conveyance of the insured property by Scott to Riddle and by the latter to Fuquay worked a change of title and interest therein, and because the company neither consented to such change nor had knowledge thereof, the policy became void by virtue of the provisions of the clause of the policy which has been quoted. The company also denies liability to Fuquay on the ground that no insurance contract respecting said building was ever effected between the company and Fuquay.

In considering the case, we have not found it necessary to notice whether or not, under the facts, there is any liability to Fuquay on the part of the insurance company. The judgment of the trial court is in favor of Fuquay and Scott, jointly, for the full amount of the policy. Scott makes no complaint of this. We shall therefore notice, in discussing the case, only the question of liability of the company to Scott.

■ It is a general rule that a revocation by the principal, of the general authority of his agent, is ineffective as between the principal and such third persons as deal with the agent, as such, on the faith of the continued existence of his authority, without notice of the revocation. 2 C. J. p. 539 et seq., and authorities there cited. See, also, 2 Joyce, Insurance (2d Ed.) § 721, p. 1626.

■ At the time the policy sued on was issued to Scott by the insurance company, through its agent J. B. Rowland, the latter was general agent for the company. As such general agent, he had authority to waive for the company, after the policy was issued, the benefits of any stipulation contained therein, including the stipulation which has been quoted. As to Scott, no revocation of this authority by the insurance company could become effective until Scott had notice of the revocation. It is an admitted fact that Scott, before the fire occurred, had no knowledge of the revocation of Rowland's authority by the insurance company. The judgment of the trial court implies the further fact finding that he had no notice thereof, and the facts, we think, do not charge him with such notice as a matter of law.

■ We are further of the opinion that

what transpired on the occasion of Scott's visit to Rowland, immediately after the execution of the deeds heretofore mentioned, establishes a waiver by Rowland of the policy stipulation in question, in so far as it applied to the change of interest and title which had been effected by said deeds. This waiver bound the insurance company, and that change of interest and title no longer affected the liability of the insurance company to Scott under the insurance contract. The policy, upon the total destruction of the building by fire, became a liquidated demand in the hands of Scott by virtue of the provisions of article 4929 of the Statutes.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.