MARYLAND CASUALTY COMPANY et al.,
Petitioners,

v.

PALESTINE FASHIONS, INC., et al.,
Respondents.

No. A–11078.

Supreme Court of Texas.

May 4, 1966.

Rehearing Denied June 1, 1966.

Ramey, Brelsford, Flock & Devereux, Michael A. Hatchell, with above firm, Tyler, for petitioners.

John L. Bates, Waco, for respondents.

SMITH, Justice.

This suit was filed by Palestine Fashions, Inc., Kay's Ladies and Children's Shop, Inc., R. H. Johnson, E. W. Hickman, Individually and d/b/a The Bootery and John L. Bates against Maryland Casualty Company and Pan American Insurance Company and B. B. Campbell, Individually and d/b/a Campbell Insurance Agency, to recover on two fire insurance policies insuring Edward W. Hickman d/b/a The Bootery against direct loss resulting from the destruction by fire of the contents of a shoe store in Palestine, Texas. Based upon a jury verdict, the trial court entered a judgment against each of the defendant insurance companies in the amount of $10,000.00 in favor of John L. Bates, Trustee, as majority stockholder of plaintiff, Kay's Ladies and Children's Shop, Inc., (a defunct corporation), and the plaintiff, Palestine Fashions, Inc. The judgment of the trial court granted R. H. Johnson an equitable lien on the proceeds of the two policies. All other parties, including the plaintiff, E. W. Hickman, Individually and d/b/a The Bootery, and the defendant B. B. Campbell, were dismissed and all issues not expressly disposed of by the judgment were found against the party or parties seeking such relief. There is no question as to the finality of the trial court judgment.

On appeal the Court of Civil Appeals reduced the rate of interest on the judgment from 10 per cent to 6 per cent; otherwise the judgment of the trial court was affirmed. 393 S.W.2d 664. We reverse the judgments of the trial court and the Court of Civil Appeals insofar as those judgments allow a recovery of any sum of money against the two insurance companies.

The two insurance policies, identical in all material particulars, were issued by B. B. Campbell, a local agent for both insurance companies to Edward W. Hickman d/b/a The Bootery for a term of one

year from August 11, 1962, to August 11, 1963. The policies contained a provision that no assignment would be valid without the written consent of the insurance company and, further, that "[u]nless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring * * * (d) following a change in ownership of the insured property * * *."

It has been the position of the companies throughout that the facts giving rise to this controversy established as a matter of law that the companies, as insurers, are not liable to the plaintiffs because of the failure of the plaintiffs to obtain an endorsement on the policies at the time Hickman transferred the property. The plaintiffs, to the contrary, have consistently maintained that both companies, through their agent, B. B. Campbell, waived the change of ownership provision of the policies. The issue of waiver was submitted to the jury, and the jury found that each company waived the provision of its policy providing termination of liability thereunder following a change in ownership of the insured property. The facts, briefly stated, upon which plaintiffs rely to support the issue of waiver, are these:

It is undisputed that the insured, E. W. Hickman, on April 1, 1963, called B. B. Campbell, the agent for both insurance companies, and advised him that "The Bootery" had been sold to R. H. Johnson and requested Campbell to prepare endorsements to be attached to the policies in favor of Johnson. However, about 30 minutes later Hickman called again and advised Campbell that the property was being sold but that Johnson would not be the new owner, that when the name of the new owner was determined, Campbell would be advised. The last conversation between Hickman and Campbell was about one week after April 1, 1963, when Campbell called Hickman "to try to determine who the new owners were." Upon being advised that the name of the new owner

had not been determined, Campbell told Hickman that without information as to the new owner, he "could not issue an endorsement." Campbell did not warn or remind Hickman of the policy provision requiring notice to the company and a written endorsement upon transfer of title to the insured property to another. The fact that Hickman initially called Campbell requesting an endorsement to Johnson is indicative that he was aware of the necessity for such endorsement before a contract of insurance would be effected between the new owner of the property and the insurers. After the withdrawal of Hickman's request to note by endorsement on the policies that Johnson was the new owner, Campbell received no further information as to the change of ownership of The Bootery. Campbell was never told to cancel the policies, nor was he ever told definitely that the insurance would be kept in force by the new owner or owners.

Unknown to Campbell, the following had taken place regarding the ownership of the store: About March 25, 1963, with Hickman's consent, Johnson foreclosed a chattel mortgage he held against The Bootery, and he took a Quit-Claim Bill of Sale as to any other interest Hickman might have in the store. Thereafter about April 1, 1963, Johnson transferred the store to Kay's Ladies and Children's Shop, a corporation chartered in 1957, as Trustee for a proposed corporation which was being formed. This proposed corporation was merely awaiting approval of a name before receiving its charter. On April 15, 1963, the day after the fire, Kay's Ladies and Children's Shop sold the store to Palestine Fashions, the new corporation. Palestine Fashions had been chartered on April 9, 1963, but no notice of the new corporation's name or stockholders had been given to Campbell, the insurance agent, between the time the corporation was chartered and the fire on April 14, 1963. The record is undisputed that at all pertinent times prior to the fire, Campbell and the insurance companies were completely without knowledge of the owner-

ship of the property by any of the plaintiffs, including Kay's Ladies and Children's Shop, Inc., Palestine Fashions, Inc., and John L. Bates, either individually or as Trustee for Kay's and Palestine. It is equally clear that Hickman did not own the insured property at the time of the fire.

The Court of Civil Appeals relied upon the following cases in affirming the trial court judgment against the insurance companies. Scott v. Law Union & Rock Ins. Co., 12 S.W.2d 147 (Tex.Com.App.1929); British America Assurance Co. v. Francisco, 58 Tex.Civ.App. 75, 123 S.W. 1144 (1910, refused); New York Underwriters Ins. Co. v. Brittain, 62 S.W.2d 168 (Tex. Civ.App.1933, dism.).

In the Scott case, Scott sold his insured building to Riddle for $200 cash and vendor's lien notes for the balance of $1,800. Riddle, on the same day, sold to Fuquay. Scott then, to protect himself, notified the local agent of the insurance company and requested a transfer of the policy to Fuquay, but the agent, since the policy was to expire in about two months, said he would make the transfer when Fuquay sold the property again, if he did, or when the policy expired, if he did not sell it. Scott told the agent that if that was "all right that is all I want." Within the two months left on the term of the policy the building burned. The Commission of Appeals held that, since Scott had requested a transfer and the agent had told him it was "all right the way it stands now," Scott was still protected, the provision had been waived, and the company was liable to Scott for the full amount of the policy.

In the Francisco case, Dixon, the owner of a lot and building burdened with a lien secured by a deed of trust in favor of one Jeanie Ely for a debt in the principal sum of $1,000, sold the property to Schultze who agreed to assume the debt to Ely. Thereafter Schultze took out fire insurance with British America in the amount of $1,200 on the building. The policy provided that it would be void if any change in the interest, title or possession of the insured occurred but that the mortgagee (Ely) would be protected to the extent of her interest if she gave notice to the company of any change jeopardizing the policy. The insurance company, upon payment to her of indemnity to the extent of her interest, would be subrogated to her rights. Schultze sold the property through McIntosh, a real estate agent, to Francisco, the plaintiff, for the sum of $1,000 plus assumption of the debt to Ely. McIntosh held the deed in escrow and notified Willie, the agent of British America, that the property had been sold, that the deed would be held in escrow until payment of the promised sum to Schultze, and that he wanted the property protected until the deed was delivered and the policy formally transferred. Willie made a memorandum of this and told McIntosh to notify him "when you finish that matter up." Francisco later paid the amount owed to Schultze, and the deed was given to him. However, Willie was not given further notice, and the policy was never transferred. The building burned about a month later.

British America paid $1,090 in principal and interest owed to Ely by Francisco and took an assignment of her note and deed of trust. The company denied liability to Francisco, demanded payment of the note it held, and, when payment was refused, foreclosed on the lot, buying in for $500. Francisco brought suit to cancel the trust deed and recover the $110 due to him under the policy over and above the $1,090 paid to Ely. The insurance company counterclaimed for the balance of $590 due on the note. The trial court entered judgment for Francisco, which was affirmed by the Court of Civil Appeals saying:

"* * * [T]he failure of the agent of the insurance company to object to the transfer of the policy, upon being told that Schultze had sold the property to the plaintiff, and upon the payment of the cash consideration a deed which

was then being held by McIntosh in escrow would be delivered to the plaintiff, together with the fact that the agent of the company made a memorandum at the time that this information was given him, and requested that he should be further notified when the sale was consummated, constituted a waiver of the provision in the contract against alienation, and was, in effect, a consent by the company to said sale; and that such conduct on its part, which evidently had a tendency to induce the agent of the plaintiff to believe that the company would be satisfied as to said sale and willing to carry the risk, is sufficient to estop it from now asserting a forfeiture of the policy. * * *"

Finally, in the Brittain case, Fitts owned a house which he desired to sell to Brittain. The house was insured for $2,000 with the defendant insurance company and the policy provided that it would become void if any change should take place in the interest, title or possession of the premises. Fitts testified that he told Johnson, defendant's insurance agent, about the contemplated sale to Brittain, that Johnson did not object, but stated that he might reduce the coverage to $1,500. Fitts told him not to do that as it might cause Brittain not to buy. After the sale Fitts gave the policy to Brittain who tried to see Johnson at his office, in order to get the policy endorsed, but failing this Brittain gave the policy to Sanders, Brittain's lawyer, to deliver to Johnson for the proper endorsement over to Brittain. Sanders delivered the deed to Johnson and Johnson again remarked that he did not want to carry the policy for $2,000. Sanders objected and told Johnson to talk to the bank which held a lien on the property; the bank also objected to any such reduction in coverage to Johnson. Several days later Johnson redelivered the policy to Sanders without change or endorsement. Johnson never stated that the policy was cancelled nor did he offer to refund any unearned premium. After all of these transactions, the dwelling house burned.

The Court of Civil Appeals, in affirming the trial court judgment for the plaintiff, Brittain, held that there was a new contract between Brittain and the company embodying the terms of the original contract. The crucial facts upon which the court seemed to base its holding were stated thus:

"* * * [T]he acts of appellant's agent in redelivering the policy to appellee's attorney and in retaining the unearned premium were wholly inconsistent with the idea advanced in this case by appellant that it never consented to the assignment of the policy from Fitts to Brittain. If the contract was to be treated by appellant's agent as void, then why did he deliver the policy to Brittain's attorney? In ordinary practice, when an agent cancels a policy he takes it up."

The Court emphasized that since Brittain notified Johnson that he definitely desired to keep the insurance in force, it was incumbent upon Johnson to tender a return of the unearned premiums before a forfeiture could be claimed. In stating the rule of law governing cases of this nature the court said:

"* * * It is well settled by the decisions of our courts that, when an insurance agent with power to bind his company, and *with full knowledge of the facts,* does some *unequivocal act* showing an intention to treat the policy as valid and binding after the date on which, under its terms, it would have become forfeited, such conduct will amount to waiver of the forfeiture provisions." [Emphasis added.]

In each of the cases cited by the Court of Civil Appeals and discussed above, the agent of the insurance company was aware of the identity of the purchaser of the property and had been definitely informed that the new owner desired to

maintain the insurance on the property in effect. Furthermore, in the Scott case, the agent told Scott that the policy was effective without an endorsement thereon and that his interest was still protected. None of these elements are present in the instant case. Instead, Campbell told Hickman that he must know the identity of the new owners or he could not make out the necessary endorsement, implying that he was unwilling to assent to a new contract insuring the new owners against loss without knowing their identity. Campbell did not know of the several transfers of title to the shoe store, including the foreclosure, or he might have elected to cancel the policy immediately. He was never given a definite commitment by Hickman that the new owners, whoever they were, would want to continue the insurance in force. In other words, as we view the facts Campbell does not come within the rule stated in the Brittain case in that he did not have full knowledge of the facts and did nothing which can be said unequivocally to have revealed an intention to effect a novation of the policy with parties unidentified as to him after the transfer of the insured property. Rather, the evidence indicates that Campbell, in making the inquiry as to the identity of the new owners, was interested in the character and personality of the parties with whom he would be contracting. The courts recognize the principle that this is information which the insurer is entitled to have before being bound to a contract personal in nature. St. Paul Fire & Marine Ins. Co. v. Culwell, 62 S. W.2d 100 (Tex.Com.App.1933); Lowe v. Michigan Fire & Marine Ins. Co., 236 S. W.2d 168 (Tex.Civ.App.1950, wr. ref.).

■ The contractual agreement between the insurer and the insured, embodied in the policy, is not an insurance of property without regard to the ownership, but rather it is an agreement of indemnity against such loss or damage as the insured owner might sustain by reason of his ownership of the property covered by the policy. Since the policies herein sued upon are personal contracts solely between Hickman and the insurers, and since the evidence shows no endorsement on the policies in favor of anyone other than Hickman, and since the judgment of the trial court, affirmed by the Court of Civil Appeals, denied Hickman, the insured, any right to the policy proceeds, Kay and Palestine and Bates, as trustees, complete strangers to the contract, are not in a legal position to recover an interest in the policy proceeds. Furthermore, Kay, Palestine and Bates asserted no claim of a right of action over and against Hickman in the event of a recovery by Hickman. Therefore, those plaintiffs have no interest in the insurance policy proceeds by way of assignment or by way of novation.

■ Kay, Palestine and Bates have been allowed to sue in their own right and to recover in their own right on policies of insurance in which they were not named as the insured apparently upon the theory that the facts not only established a waiver of the contractual provision involved, but created a contract between the insurance companies and Kay, Palestine and Bates, persons wholly unknown to them. The Court of Civil Appeals apparently adopted the theory that waiver of the change of ownership provision of the policy was shown to have been made in favor of Johnson, the Company's liability in favor of Kay, Palestine and Bates was established, and that this being true, these parties were entitled to sue on the insurance contracts in their own right. This holding of the Court of Civil Appeals is untenable. The holding has given coverage in favor of strangers to the contract. There is no evidence that B. B. Campbell at anytime intended to waive the change of ownership provisions in the policies of insurance. There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intention to rely upon such right. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855 (1958).

The judgments of the trial court and the Court of Civil Appeals are both reversed insofar as those judgments award a recovery of any sum of money against the two insurance companies and judgment is here rendered that the plaintiffs take nothing as against the defendants, Maryland Casualty Company and Pan American Insurance Company. In all other respects, the judgments of the courts below are affirmed. All costs are adjudged against the plaintiffs.

Affirmed in part and reversed and rendered in part.