**REPUBLIC INSURANCE COMPANY, Petitioner,**

**v.**

**SILVERTON ELEVATORS, INC., et al., Respondents.**

**No. B–3333.**

Supreme Court of Texas.

April 11, 1973.

Rehearing Denied May 30, 1973.

Evans, Pharr, Trout & Jones, John A. Flygare, Lubbock, for petitioner.

Gibbins & Spivey, Bob Gibbins and Patrick Hazel, Austin, for respondents.

DANIEL, Justice.

This suit was brought by Respondents, Silverton Elevators, Inc. and Carl L. Tidwell, against Petitioner, Republic Insurance Company, to recover under a Texas Standard Fire Policy issued to Silverton Elevators by Republic covering a residential dwelling and household goods contained therein. In a non-jury trial, Silverton was awarded $3,000 "for the use and benefit" of Carl L. Tidwell for the loss of the household goods. The Court of Civil Appeals affirmed. 477 S.W.2d 336. We affirm.

Carl L. Tidwell was at all times material to this controversy, an officer, director and the general manager of Silverton Elevators, Inc. Silverton owned and furnished to Tidwell a house near its elevators, together with the insurance on the house and on Tidwell's household goods, as part of his compensation as general manager. Since 1964, Republic's local agent had issued and renewed insurance policies in the name of Silverton covering the dwelling

and its household goods. It is undisputed that the local agent, who had authority to issue the policies and receive the premiums, knew that the household goods belonged to Tidwell and that Silverton was carrying the insurance for the benefit of Tidwell. On April 17, 1970, a tornado destroyed the house and the household goods.

On the date of the tornado there was in effect a Texas Standard Fire Policy with Extended Coverage on DWELLING & HOUSEHOLD GOODS in the sum of $10,000 issued by Republic to Silverton for the period of April 20, 1969 to April 20, 1972, insuring against loss from windstorm the specifically described "occupied dwelling" for $7,000 and "household goods . . . while in the described building" for $3,000.00. It is undisputed that Silverton paid the $227.00 premium, and the local agent admitted that at the time he issued the policy he knew the facts heretofore mentioned with respect to actual ownership of the insured property. He testified that he wrote the policy to cover Tidwell's household goods located in the dwelling which Tidwell and his family occupied; that he knew Silverton was carrying the policy on the household goods for the benefit of Tidwell; that when he issued the policy he did not think it made any difference that it was in the name of Silverton because "they were paying the premium"; and that he told Tidwell that the policy covered his household goods both before and after the tornado.

Republic acknowledged coverage on the house and paid Silverton $7,000 for its damage, but it denied any liability to Silverton or Tidwell on the household goods. Thereupon, Silverton and Tidwell brought this suit against Republic claiming coverage to the limit of the policy ($3,000) on the household goods owned by Tidwell. Republic defended on the grounds that Silverton had no ownership and therefore no insurable interest in the household goods and that the policy as written was limited by its terms to household goods owned by

Silverton Elevators, Inc., the named insured.

Silverton and Tidwell's pleadings asserted that they both had insurable interests; that the insurance was purchased by Silverton and extended to Tidwell as part of his compensation as manager and as "a legal representative of Silverton Elevators, Inc."; and that when Republic issued its policy and accepted premiums with full knowledge of the true ownership and relations between Silverton and Tidwell, it waived the right to complain about any lack of ownership or insurable interest of the named insured and was estopped from denying coverage on behalf of Tidwell. As heretofore indicated, the trial court awarded Silverton Elevators $3,000 "for the use and benefit of Carl L. Tidwell."

Since the policy refers to and clearly purports to cover the household goods located in the specifically described dwelling, we agree with the Court of Civil Appeals that the knowledge of Tidwell's ownership of the household goods by Republic's local agent and his actions with respect thereto were imputed to and binding upon Republic. Issuance of the policy and collection of the premiums with such knowledge operates as a waiver of any requirement that the named insured own or possess a beneficial interest in the insured property. National Fire Ins. Co. of Hartford v. Carter, 257 S.W. 531 (Tex.Comm'n App.1924, jdgmt adopted); Continental Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 705 (1904); Wagner v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S.W. 569 (1899); Liverpool and London and Globe Insurance Company v. Ende, 65 Tex. 118 (1885); Old Colony Insurance Company v. S. D. Messer, 328 S.W.2d 335 (Tex.Civ. App.1959, writ ref., n. r. e.); Germania Mutual Aid Association v. Trotti, 318 S. W.2d 918 (Tex.Civ.App.1958, no writ).

In the above cases, the named insureds were not the owners or sole owners of the insured properties. In each case,

the true owner was known to the insurance agent and was allowed direct recovery, or recovery for his benefit, on the grounds that the insurance company had waived warranties of sole ownership or lack of insurable interest. There is no conflict between the above cases and those which hold that waiver and estoppel cannot operate to bring within the terms of a policy liabilities or benefits which were expressly excepted therefrom, such as liability from injuries due to gunshot wounds in Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165 (1937); loss for injuries while in military service in time of war, as in Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, 177 N.W. 242 (1920); or payment of benefits beyond a specified termination date at age 65, as in Great American Reserve Ins. Co. v. Mitchell, 335 S.W.2d 707 (Tex.Civ.App.1960, writ ref.). The latter cases recognize that waiver and estoppel may operate to avoid forfeiture of coverage and benefits stated in the policy, but not to add specifically excluded risks or to enlarge the benefits or risks therein set forth. In the present case, plaintiffs seek to recover only on the risk assumed by Republic under the terms of the written policy. Republic's policy insured against the destruction of precisely the same household goods identified in its policy and for which it collected its premiums. There is no evidence that its risk was enlarged because the household goods were owned by Tidwell rather than Silverton.

Although it is undisputed that Tidwell rather than Silverton owned the household goods in the dwelling when the policy was issued and when the property was destroyed and that they were the household goods intended to be insured, Republic contends that the description, and thus the coverage, was limited by the written policy to household goods owned by Silverton. The effect is to say that the policy covered only non-existent household goods; that

even though Republic wrote a $3,000.00 policy on household goods located in the described dwelling, there was never in fact any coverage on anybody's household goods. This is inconsistent not only with the undisputed intention of its own agent but with the provisions of the policy as written. The household goods were referred to on the face of the policy as being located in the dwelling specifically described in the policy. There was no misdescription of the location of the property by the agent as in Aetna Ins. Co. v. Brannon, 99 Tex. 391, 89 S.W. 1057 (1905). Their location and identity were definitely and correctly stated. Page 1 bears a typed designation of the insured property as *"DWELLING & HOUSEHOLD GOODS."*[1] Other relevant portions read as follows:

"REPUBLIC INSURANCE COMPANY . . . In Consideration of the stipulations and conditions herein or added hereto which are made a part of this policy, and of the premiums provided DOES INSURE *SILVERTON ELEVATORS, INC.* and legal representatives . . . against direct loss resulting from any of the Perils (listed below) WHICH HAVE A PREMIUM INSERTED OPPOSITE THERETO (Column 6) and only on the property described and located as provided hereon."

Next, under "Coverage" is listed in Column 4, TOTAL INSURANCE, the sum of *$10,000.00*, and in Column 6 the separate premiums for Fire and Lightning and Extended Coverage, totaling *$227.00*. Thereafter, under DESCRIPTION OF PROPERTY is "Item 1, *$7000.00–On* the *ONE* story, *COMPOSITION* type of roof, *ASBESTOS SIDING,* building, LOCATION . . . *SILVERTON*, Texas *79257*, Lot *7, 8 & 9*, Block *143—OCCUPIED DWELLING,"* and "Item 2, *$30000.00– HOUSEHOLD GOODS* . . . Unless

---

1. These and other typewritten words on the face of the policy are italicized to distinguish them from printed words.

otherwise provided, Insurance on personal property shall cover only while in the described building." Under the above DESCRIPTION OF PROPERTY heading, in small type are the words: "See definitions of Building, Household Goods, Stock, Furniture, Fixtures, and, or Machinery, and Contents."

None of the typed or printed words on the face of the policy limit or restrict the coverage or description of household goods to those owned by Silverton Elevators, Inc., unless, as contended by Republic, the reference to and terms of the small-type printed definition on page 2 have that effect. It reads: "Household Goods: Insurance on household goods *shall include* all personal property, usual to a residence, of the insured and his family." [2]

In an early case involving a dispute about the meaning of this definition, the court said "there is ample room for such divergent views," but concluded that the words were used "by way of explanation" in a manner which broadened the ordinary meaning of the term "household goods." Dixie Fire Ins. Co. v. McAdams, 235 S.W. 2d 207 (Tex.Civ.App., 1950, writ dism.). Being preceded by the words "shall include," there is no hint of limitation or restriction in the definition. It does not purport to change the descriptive location of the property or to require that it be owned by the *named* insured. Neither does it purport to limit or restrict the description or the extent of coverage as set forth on page 1 of the policy. See Alexander v. Firemen's Ins. Co., 317 S.W.2d 752, 755 (Tex.Civ.App., 1958, no writ).

Republic's argument to the contrary ignores the purpose served by definitions in a Texas Standard Fire Policy, the terms of which were promulgated by the State Board of Insurance under Articles 5.35 and 5.36 Texas Insurance Code, V.A.T.S. Insurance companies are prohibited from departing from the provisions of these approved terms. Commercial Union Assur. Co. v. Preston, 115 Tex. 351, 282 S.W. 563 (1926). Descriptive words of coverage, including location and description of the property, terms of coverage, and amount of premium for each coverage, are to be typed in on the face of the policy (page 1) as was done by Republic's agent on the policy before us. Definitions, Special Conditions, Specific Coverage Conditions, and Basic Conditions are printed on pages 2 and 3 of the standard policy. The principal function of the standard "definitions" is to explain what the terms used on page 1 include in addition to their ordinary meaning. The first phrase in the definition of every term referred to on page 1 and defined on page 2 of this standard policy contains the words *"shall include"* and in some manner enlarges rather than limits the ordinary meaning of the term. By means of these standard definitions, the Board has required insurance companies to clearly explain that the terms used on page 1 include within the general classification and coverage certain types of property about which a contest or uncertainty might otherwise arise. We have found no instance in which a Texas court has held that a definition in the Texas Standard Fire Policy limits or restricts either the coverage or the description of the property as contained on the face of the policy. Perhaps this is due to the well settled rule that the words "include," "including," and "shall include" are generally employed as terms of enlargement rather than limitation or restriction. Peerless Carbon Black Co. v. Sheppard, 113 S.W.2d 996, 997 (Tex.Civ.App.1970, writ ref.); Houston Bank & Trust Co. v. Lansdowne, 201 S. W.2d 834, 838 (Tex.Civ.App.1947, writ ref. n. r. e.); El Paso Electric Co. v. Safeway Stores, 257 S.W.2d 502, 506 (Tex.Civ.App. 1953, writ ref. n. r. e.); Alexander v. Firemen's Ins. Co., 317 S.W.2d 752, 755 (Tex.Civ.App.1958, no writ). We hold that the words "shall include" as used in

2. Emphasis added here and throughout the remainder of this opinion.

this definition are terms of enlargement rather than limitation, and the definition does not have the effect of restricting the coverage or description of the property as set forth on the face of the policy.

Republic would have the definition interpreted as though it contained the following additional italicized words: "Insurance on household goods shall include *and mean only* all personal property, usual to a residence, *owned by* the *named* insured [Silverton Elevators, Inc.] and his family." The effect of such construction would be *to add the requirement of sole and unconditional ownership by the named insured* to the description and coverage, which would be contrary to the policy as written and as promulgated by the Board of Insurance. This required warranty of ownership by the named insured was once carried in the Texas Standard Fire Policy, but it has long since been discarded by the Board. Dean v. Pioneer Co-Operative Fire Ins. Co., 231 F.2d 18 (5th Cir. 1956); 24 S.W. L.J. 373. It is true that the last phrase of the standard printed definition, "of the insured or his family," is not appropriate to Silverton Elevators, Inc., since it never owned any household goods within the dwelling described on page 1; it has no residence in the sense of a home; and it has no family. The same discrepancy exists to some extent each time this standard policy is issued to a corporation. Since the phrase is inapplicable and meaningless surplusage in the policy issued to Silverton, it should be disregarded instead of applied in a manner so inconsistent with the rest of the policy as to defeat all coverage of household goods for which Republic collected premiums. London & Provincial Marine & General Ins. Co. v. Sykes, 66 S. W.2d 382 (Tex.Civ.App.1933, writ dism.); Trinity Portland Cement Co. v. Lion Bonding & Surety Co., 229 S.W. 483 (Tex. Comm'n App.1921, jdgmt adopted).

It has been suggested, but not by Republic, that the building item provision contained in the "Mortgage or Trustee" clause at the bottom of the face of the policy, and particularly the last sentence thereof, limits liability for compensation to the "interest of the insured," and that this applies to personal property.[3] Even though the provision does not speak of "named insured," and for all practical purposes Tidwell was the "insured" because the policy as to household goods was written for his benefit, there are other more compelling reasons why this provision is inapplicable to the personal property involved in this case. Clearly, the entire clause refers to loss on "building items," their value at the time of loss less depreciation, repair, replacement and reconstruction, etc. None of the language refers to personal property. Furthermore, the last sentence begins with the words, "Subject to Article 6.13 of the Texas Insurance Code," and this Article contains the specific provision that: "The provisions of this article shall not apply to personal property."

The above clause has been a part of the Texas Standard Fire Policy form prescribed by the Insurance Commission since

---

3. The clause reads:
   "Loss on building items shall be payable to *ASSURED ONLY*
   "Address        as Mortgagee or Trustee, as their interest may appear at time of loss, subject to Mortgage Clause (without contribution) printed elsewhere in this policy. Subject to Article 6.13 of the Texas Insurance Code, 1951, liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture; nor shall it exceed the interest of the insured, or the specific amounts shown under 'Amount of Insurance.' "

1943. Since then we have found no case involving a claim of an actual owner for whose benefit a policy was taken out with full knowledge by the insurance company of the true ownership, in which this clause has been applied to deny recovery by or on behalf of the true owner. See Dean v. Pioneer Co-Operative Fire Ins. Co., 231 F.2d 18 (5th Cir. 1956); Farmers Ins. Exchange v. Nelson, 479 S.W.2d 717 (Tex. Civ.App.1972, writ ref. n. r. e.); and Old Colony Insurance Co. v. Messer, 328 S.W. 2d 335 (Tex.Civ.App.–1959, writ ref. n. r. e.). In the later case the clause was specifically raised as a defense and overruled on the grounds (1) that the company was estopped by its knowledge that the named insured was not the true owner and (2) that one for whose benefit a policy is issued under such circumstances is entitled to recover thereon. The latter reason was based on a well-established rule of contract law which is applicable to insurance contracts. See discussion of the rule in Cumis Ins. Soc. Inc. v. Republic Nat. Bank, 480 S.W.2d 762 at page 767, (Tex.Civ.App. 1972, writ ref. n. r. e.); Annotation, 61 A. L.R. 720; 4 Corbin on Contracts 211 § 807.

■ Whether applicable to personal property or not, we hold that the portion of the clause relating to limitation of liability to "the interest of the insured" falls within the category of ownership provisions which may be waived; the insurer may be estopped from denying liability to the true owner on policies issued in the names of third parties covering the risks on identified property with full knowledge by the company that the property is actually owned by the one for whose benefit the policy was written or maintained. National Fire Ins. Co. of Hartford v. Carter et al., 257 S.W. 531 (Tex.Comm'n App.1924, jdgmt. adopted); Scott et al v. Law Union & Rock Ins. Co., 12 S.W.2d 147 (Tex. Comm'n App.1929, jdgmt adopted); Old Colony Insurance Co. v. Messer, supra; New York Underwriters Ins. Co. v. Brit-

tain, 62 S.W.2d 168 (Tex.Civ.App.1933, writ dism.); Mecca Fire Ins. Co. v. Smith, 135 S.W. 688 (Tex.Civ.App.1911, no writ hist). See Maryland Casualty Co. et al v. Palestine Fashions, Inc. et al., 402 S.W.2d 883 (Tex.1966), and cases heretofore cited in paragraph 6 this opinion.

■ Republic insists that reformation of the policy is the only proper remedy, if any, for recovery by Silverton on behalf of Tidwell, because of failure of the written policy to identify the household goods as belonging to Tidwell. We disagree. As heretofore indicated, under the undisputed facts, the household goods described in the policy belonged to Tidwell and were insured by Silverton for his benefit in a policy drawn by Republic's agent for such purpose, with assurances from the agent that it would cover Tidwell's furniture. If this was a mistake, it was made by Republic's agent, and it was mutual, because Tidwell and Silverton took the agent's word that it expressed the true agreement. With this evidence being fully developed in the present record, there is no reason to require another trial for reformation of the written policy. It has been held that even without a plea for reformation, when the facts show the true agreement intended and a mutual mistake, or mistake of the agent, in preparing the written policy, the agreement intended will be enforced without going through the formal proceedings of reformation. Aetna Ins. Co. v. Brannon, 99 Tex. 391, 89 S.W. 1057; Aetna Ins. Co. v. Brannon, 53 Tex.Civ.App. 242, 116 S.W. 116 (Tex.Civ.App.1904, no writ). See also 25 A.L.R.3d 589 § 3; 25 A.L.R.3d 1239 § 3; and 32 A.L.R.3d 677 § 3.

Silverton and Tidwell made every proof in this case that would entitle recovery on the policy as written. Under the above cited authorities, the trial court and Court of Civil Appeals have properly held that Silverton is entitled to recover for the benefit of Tidwell on the written policy without seeking a reformation thereof.

Accordingly, the judgments of the lower courts are affirmed.

Dissenting Opinion by WALKER, J., joined by GREENHILL, C. J., and POPE and REAVLEY, JJ.

WALKER, Justice (dissenting).

I respectfully dissent. In so far as relevant here, the face of the policy provides as follows:

REPUBLIC

INSURANCE COMPANY

A Capital Stock Company

INSURED: Silverton
  Elevators, Inc.
  Silverton, Tex.
  79257

Home Office

2727 Turtle Creek Boulevard
Dallas, Texas 75219

In Consideration of the stipulations and conditions herein or added hereto which are made a part of this policy . . . does insure Silverton Elevators, Inc. and legal representatives . . . against direct loss resulting from any of the Perils (listed below) which have a premium inserted opposite thereto (Column 6) and only on the property described and located as provided hereon.

\*    \*    \*

| Item No. | Amount of Insurance | DESCRIPTION OF PROPERTY<br>See definitions of Building, Household Goods, Stock, Furniture, Fixtures, and, or Machinery, and Contents |
|---|---|---|
| 1 | 7,000.00 | [Description of Building] |
| 2 | 3,000.00 | HOUSEHOLD GOODS<br>\* \* \*<br>Unless otherwise provided, insurance on personal property shall cover only while in the described building. |

\*    \*    \*

Loss on building items shall be payable to      ASSURED ONLY
Address      as Mortgagee or Trustee, as their interest may appear at time of loss, subject to Mortgage Clause (without contribution) printed elsewhere in this policy.

Subject to Article 6.13 of the Texas Insurance Code, 1951, liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture; nor shall it exceed the interest of the insured, or the specific amounts shown under "Amount of Insurance."

The following definitions, among others, appear on the second page of the policy:

HOUSEHOLD GOODS—Insurance on household goods shall include all personal property, usual to a residence, of the insured and his family.

Household Goods Extension—At the option of the insured, up to 10% of the insurance written specifically on "Household Goods" in a residence may be applied as excess insurance as follows: (a) on household goods of the insured elsewhere on the premises and when temporarily removed to any other location in the United States of America, Canada, and Mexico, and, (b) while on the premises on household goods of servants and on household goods of others in the custody of the insured.

* * *

CONTENTS—Insurance on "Contents" shall include all property included above in "Stock," "Furniture, Fixtures, and, or Machinery," "Household Goods," and, if not otherwise insured, personal property of the employees, officers, or partners; any loss to such personal property shall, at the option of this Company, be adjusted with and payable to the insured.

The policy on its face purports to insure "Household Goods," but only while in the described building and only to the extent of the interest of Silverton Elevators, Inc. therein. Upon looking to the definitions, which are expressly incorporated by reference in the face of the policy, we find that the policy covers "all personal property, usual to a residence, of the insured and his family." Coverage was thus extended in an appropriate case to the family of the insured. At the option of the insured, up to 10% of the stipulated amount might be applied as excess insurance to the household goods of servants and household goods of others in the custody of the insured. There is, however, nothing in the policy extending the full coverage to household goods not owned by the named insured. If the policy had been written to insure "Con-tents," the personal property of employees and officers of the insured, including Tidwell, would have been protected. This was not done, and the policy as written does not purport, and cannot reasonably be construed, to provide full coverage for property owned by persons other than Silverton Elevators, Inc.

The provision limiting liability to the interest of the insured obviously applies to both real and personal property. Since the Court does not hold otherwise, no purpose will be served by a discussion of the point. According to the majority opinion, the provision limiting liability "falls within the category of ownership provisions which may be waived; the insurer may be estopped from denying liability to the true owner on policies issued in the names of third parties *covering the risks on identified property* with full knowledge by the company that the property is actually owned by one for whose benefit the policy was written and maintained." (Emphasis supplied) It will be noted that the Court there assumes that the policy covered Tidwell's property, and that is the question presented for decision. There is no contention and has been no suggestion that the limitation of liability would, in itself and under the facts of this case, deprive respondents of a recovery to which they might otherwise be entitled under the provisions of the policy. It is, however, one of the provisions that should be considered in determining the coverage afforded by the policy as written. It must be eliminated in some way before the policy can be said to cover all household goods, regardless of by whom owned, located in the described dwelling. This the Court attempts to do by holding that the limitation of liability provision has been waived. I do not agree.

The net effect of the majority holding is to extend the policy coverage and create an entirely different contract by waiver or estoppel. That is contrary, of course, to the established rule in Texas and most other jurisdictions. Washington Nat. Ins. Co.

v. Craddock, 130 Tex. 251, 109 S.W.2d 165; Great American Reserve Ins. Co. v. Mitchell, Tex.Civ.App., 335 S.W.2d 707 (wr. ref.); Massachusetts Bonding & Ins. Co. v. Dallas Steam Laundry & Dye Works, Tex.Civ.App., 85 S.W.2d 937 (wr. ref.); 43 Am.Jur.2d, Insurance § 1184; Annotation, 1 A.L.R.2d 1139.

As pointed out by the Supreme Court of Michigan in Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, 177 N.W. 242, "to apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy." Neither doctrine can properly be made to serve that purpose. In Great American Reserve Ins. Co. v. Mitchell, Tex.Civ.App., 335 S. W.2d 707 (wr. ref.), the court reviewed the authorities and correctly stated the Texas rule as follows:

. . . Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel can not create a new and different contract with respect to risks covered by the policy. This has been the settled law in Texas since the decision in Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854. . . .

None of the cases cited in support of the waiver holding is pertinent here. Most of them involved the so-called sole and unconditional ownership clause, which provided that the entire policy would be void if the interest of the insured was other than sole and unconditional ownership. Others involved a stipulation that the policy would be void in case of a change of ownership unless otherwise provided by agreement endorsed on the policy. The policy in Old Colony Insurance Co. v. Messer, Tex.Civ. App., 328 S.W.2d 335 (wr. ref. n. r. e.) covered the dwelling that was damaged by fire, but it contained a provision limiting liability to the interest of the insured and another making the policy void if the insured had concealed any material fact. These provisions as well as lack of insurable interest were pled by the insurance company in bar. Although the jury made findings tending to support an estoppel theory, the Court of Civil Appeals affirmed the trial court's judgment in favor of the true owner on the basis of its holding that the provisions in question had been waived by issuance of the policy and acceptance of the premiums with knowledge of the ownership of the property. Be that as it may, there was no question of coverage in the case, and the decision does not stand for the proposition that the limitation of liability may be waived out of the policy for the purpose of determining coverage.

There is no sole and unconditional ownership or similar provision involved in the present case. Petitioner does not urge lack of insurable interest and, contrary to the suggestion in the majority opinion, we are not concerned with a "requirement that the named insured own or possess a beneficial interest in the insured property." The provision limiting liability to the interest of the insured is not a requirement, warranty or representation. It is not a condition of forfeiture, but it is of considerable importance here in determining the property covered by the policy. So far as I am able to determine, the present case is the first in which our Court has held, albeit somewhat circuitously, that an insurance company may "waive" itself into liability for a loss not covered by the policy.

It is my opinion that respondents are not entitled to recover on the policy as written, and that is all they have attempted to do thus far. Tidwell may show his right to recover by offering evidence and obtaining findings that establish mutual mistake and the terms of the true agreement. See Aetna Ins. Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057. The trial court would then be in position to enter a judgment based on the

coverage actually agreed upon and intended by the parties. It would also be in position to insure that petitioner receives the appropriate premium for the risk actually assumed. I would reverse the judgments of the courts below and remand the cause in the interest of justice.

GREENHILL, C. J., and POPE and REAVLEY, JJ., join in this dissent.