ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

April 15, 2003

Mr. Felipe T. Alanis
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0060

Re: Relative authority of the State Board of Education and the Commissioner of Education with regard to the adoption of academic excellence evaluators and the evaluation of school districts under chapter 39 of the Education Code (RQ-0607-JC)

Dear Commissioner Alanis:

You inquire about the relative authority of the Commissioner of Education ("the Commissioner") and the Texas Education Agency ("the Agency") on the one hand, and the State Board of Education ("the Board") on the other, with respect to the performance indicators and accreditation status for public schools under chapter 39 of the Education Code. Your questions first require the examination of section 39.051 of the Education Code, concerning academic excellence indicators ("AEIs"), which was revised by three separate enactments of the Seventy-seventh Legislature.

Your questions are occasioned by a controversy between the Board and the Commissioner as to the responsibility for defining the appropriate dropout rate to be used in the annual determination of the performance of Texas school districts and their accreditation status. Pursuant to section 39.073(a) of the Education Code, "The agency shall annually review the performance of each district and campus on the indicators adopted under sections 39.051(b)(1) through (7) and determine if a change in the accreditation status of the district is warranted." TEX. EDUC. CODE ANN. § 39.073(a) (Vernon Supp. 2003). Section 39.051(a) of the Code provides, "The State Board of Education shall adopt a set of indicators of the quality of learning on a campus. The State Board of Education biennially shall review the indicators for the consideration of appropriate revisions." *Id.* § 39.051(a). Questions have arisen that concern the use of a "completion rate" in the calculation of dropout rates for the purposes of the indicator required by section 39.051(b)(2). As you put it, "A number of questions have arisen regarding the authority of the Board over the AEIs . . . and the effect of that authority on the commissioner's role in determining a school district or campus' accountability rating, as well as on the annual report required by Section 39.182."[1] You note in

---

[1] Letter from Felipe T. Alanis, Commissioner of Education, Texas Education Agency, to Honorable John Cornyn, Texas Attorney General at 3 (Sept. 10, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

particular a resolution adopted by the Board in November 2001: "That a high school completion rate (Grades 9-12) *replace* the annual dropout rate in the accountability rating system, starting in the year 2003-2004." Request Letter, *supra* note 1 (Exhibit A, Resolution) (emphasis added). Your concern is whether the power granted to the Board in section 39.051(a) of the Education Code encompasses the sort of definition attempted by the November 2001 resolution, and how such definitions are to be considered in undertaking your responsibility to issue annual "report cards" and "performance reports" on the schools of Texas under sections 39.052 and 39.053.

A variety of bills were passed in the Seventy-seventh Legislature amending section 39.051(b) of the Education Code, not all of which appear to be entirely reconcilable. Accordingly, before we consider your particular questions we must determine which of two alternatives prevails in two instances. We must determine which "completion rate" statute effectively amends subsection (b)(2) of section 39.051, and whether the language permitting the Board to adopt "any other indicator" remains a part of subsection (b)(10). Under Senate Bill 702, subsection (b)(2) of section 39.051 requires the AEIs to include "dropout and completion rates." Act of May 17, 2001, 77th Leg., R.S., ch. 725, § 4, 2001 Tex. Gen. Laws 1439, 1441. On the other hand, the statutory language was amended by House Bill 1144 to require the inclusion of "dropout rates, *including* dropout rates *and* district completion rates for grade levels 9 through 12." Act of May 24, 2001, 77th Leg., R.S., ch. 834, § 10, 2001 Tex. Gen. Laws 1657, 1663-64 (emphasis added). The last legislative action on Senate Bill 702 was on May 17, 2001. The last legislative action on House Bill 1144 was taken on May 24, 2001. Accordingly, to the extent these sections conflict, House Bill 1144's language prevails. TEX. GOV'T CODE ANN. § 311.025(b) (Vernon 1998) (later enactment prevails). The AEIs are therefore mandated to contain "dropout rates, *including* dropout rates *and* district completion rates for grade levels 9 through 12."

The language giving the Board the power to adopt "any other indicator" was specifically deleted from the statute by Senate Bill 676. *See* Act of Apr. 5, 2001, 77th Leg., R.S., ch. 8, § 3, 2001 Tex. Gen. Laws 14, 15-16. There is no question that it was the intent of Senate Bill 676 to "[d]elete[] text regarding any other indicator the State Board of Education adopts." SENATE COMM. ON EDUCATION, BILL ANALYSIS, Tex. S.B. 676, 77th Leg., R.S. (2001). Accordingly, were Senate Bill 676 the only legislation enacted by the Seventy-seventh Legislature with regard to section 39.051(b)(10), the legislature's decision to strip the Board of power to adopt "any other indicator" would be unmistakably clear.

However, two later bills, Senate Bill 702 and House Bill 1144, contain the original language of subsection (b)(10). It has therefore been argued that, as these enactments are later, section 311.025(b) of the Government Code provides that they prevail over the earlier language in Senate Bill 676 which stripped the Board of its powers under subsection (b)(10).[2]

---

[2]*See* Brief from Joe J. Bernal, Vice Chair, State Board of Education, to Honorable John Cornyn, Texas Attorney General at 5 (Nov. 6, 2002) (on file with Opinion Committee); Brief from Chris Patterson, Director of Education, Texas Public Policy Foundation, to Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General at 3 (Nov. 4, 2002) (on file with Opinion Committee).

This argument, however, fails to take into account section 311.025(c) of the Government Code, which reads:

> (c) In determining whether amendments are irreconcilable, text that is reenacted because of the requirement of Article III, Section 36, of the Texas Constitution is not considered to be irreconcilable with additions or omissions in the same text made by another amendment. *Unless clearly indicated to the contrary,* an amendment that reenacts text in compliance with that constitutional requirement does not indicate legislative intent that the reenacted text prevail over changes in the same text made by another amendment, regardless of the relevant dates of enactment.

TEX. GOV'T CODE ANN. § 311.025(c) (Vernon 1998) (emphasis added).

Article III, section 36, to which section 311.025(c) refers, states, "No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length." TEX. CONST. art. III, § 36. As the Interpretive Commentary notes, "The evil designed to be remedied by this mandate was the passage of amendments in terms so blind that legislators could be deceived in regard to their effects. . . . An amendment which sought to insert words or substitute phrases by reference with no publication could well mislead as to its effect." *Id.* interp. commentary. The Court of Criminal Appeals explained in *Rhoades v. State*, 934 S.W.2d 113, 121 (Tex. Crim. App. 1996), "to amend a statute, the Legislature must indicate changes by interlineating the modifications onto the text of the statute as the text was prior to amendment."

Senate Bill 702 makes minor changes to the introductory language of section 39.051(b) and to subsection 7, but otherwise simply sets out the provision's language *in extenso.* There is no indication by interlineation that it intends to reintroduce subsection (b)(10). Nor does the legislative history suggest any such intent. The bill analysis describes that the relevant section of Senate Bill 702 "requires the indicators to be based on information that is disaggregated by race, ethnicity, gender (rather than sex), and socioeconomic status and requires the indicators to include certain information." SENATE COMM. ON EDUCATION, BILL ANALYSIS, Tex. S.B. 702, 77th Leg., R.S. (2001).

House Bill 1144's sole amendment to the language of subsection (b) is the addition of the words "including dropout rates and district completion rates for grade levels 9 through 12" to section 39.051(b)(2). Otherwise, it simply sets forth the prior statutory language. Again, there is nothing in the bill analysis to suggest an intention to re-introduce subsection (b)(10).

There is, therefore, no evidence in either of these bills of an attempt to reinstate the power to adopt other indicators which had been taken from the Board by Senate Bill 676. Absent such clear indication to the contrary, we cannot infer a legislative intent that the reenacted text in Senate Bill 702 or House Bill 1144 prevail over Senate Bill 676, even though they were enacted later.

Accordingly, the operative amendment of subsection (b)(10) is that of Senate Bill 676, deleting the text that indicates the Board has power to adopt "any other indicator."

In light of this construction of the statute we turn to your specific questions. You first ask whether the Board may, pursuant to section 39.051(a), provide for the use of the particular method of dropout calculation at issue here, as it attempted to do by resolution on November 11, 2001. It may not. The Board's resolution required that "a high school completion rate *replace* the annual dropout rate in the accountability rating system." Request Letter, *supra* note 1 (Exhibit A, Resolution) (emphasis added). Pursuant, however, to the change in subsection (b)(2) effected by House Bill 1144, the relevant indicator mandated by the legislature is "dropout rates, *including* dropout rates *and* district completion rates for grade levels 9 through 12." TEX. EDUC. CODE ANN. § 39.051(b)(2) (Vernon Supp. 2003) (emphasis added). To reach the conclusion that the Board's resolution was consistent with this language, we would have to read dropout rates as restricted to completion rates. But "it is a well settled rule that the words 'include,' 'including,' and 'shall include' are generally employed as terms of enlargement rather than limitation or restriction." *Badouh v. Hale*, 22 S.W.3d 392, 396 (Tex. 2000) (citing *Republic Ins. Co. v. Silverton Elevators, Inc.*, 493 S.W.2d 748, 752 (Tex. 1973)). The legislature has required that the calculation of dropout rates include, but not be limited to, completion rates. What the legislature requires by statute, an administrative agency cannot gainsay by rule. *See R.R. Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992) (agency "can adopt only such rules as are authorized by and consistent with its statutory authority").

Given that the Board's authority to adopt other indicators was repealed by the abolition of section 39.051(b)(10), you next ask whether indicators added by the Board to those mandated by statute before the effective date of the deletion of subsection (b)(10) remain in effect. Any such indicators were, until that time, within the Board's discretion. Accordingly, given that legislation is ordinarily prospective, *see* TEX. GOV'T CODE ANN. § 311.022 (Vernon 1998), any such indicators properly so adopted remain in full force and effect.

Your final question concerns the effect of the Board's attempted definition of dropout rates on the responsibility of the Commissioner and the Agency with respect to the determination of school accreditation status under sections 39.072(b) and 39.073 of the Education Code, as well as on the comprehensive annual report required of the Agency under section 39.182. Because we have determined that the Board lacked authority to promulgate such a definition, this question is moot.

## S U M M A R Y

The Seventy-seventh Legislature specifically required as an academic excellence indicator under section 39.051(b) of the Education Code the inclusion of "dropout rates, including dropout rates and district completion rates for grade levels 9 through 12." Accordingly, the State Board of Education does not have the authority to promulgate a rule mandating that such rates be computed based upon district completion rates alone. The Seventy-seventh Legislature further amended section 39.051(b) of the Education Code to excise the State Board of Education's authority to adopt additional academic excellence indicators. Any such indicators adopted by the State Board before the effective date of this legislation, however, remain in full force and effect.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee